**Joe Davis WHITE, Plaintiff-Appellant,**

v.

**MISSISSIPPI STATE OIL AND GAS BOARD, et al., Defendants-Appellees.**

No. 79–3836.

United States Court of Appeals,
Fifth Circuit.
Unit A

May 29, 1981.
Rehearing Denied June 29, 1981.

Cupit & Maxey, John L. Maxey, II, Jackson, Miss., for plaintiff-appellant.

William A. Allain, Atty. Gen., Hubbard T. Saunders, IV, Asst. Atty. Gen., Jackson, Miss., for defendants-appellees.

Before GEE, TATE and WILLIAMS, Circuit Judges.

GEE, Circuit Judge:

Clyde R. Davis is the supervisor and administrator of the Mississippi State Oil and Gas Board ("Board"), which was created by state law to oversee production of Mississippi's oil and gas resources. Davis, with the Board's concurrence, hired Joe Davis White for an Engineer II position in December of 1976, when White was 52 years old. In August of 1978, the Board formally voted to terminate White effective September 15; White was not provided a pretermination hearing. White sued the Board, its five individual members, and Davis, alleging that he had been terminated because of his age and that his fourteenth amendment right to procedural due process had been violated. After trial on the merits, the lower court dismissed plaintiff's claims with prejudice, and he appeals.

### Procedural Due Process Claim

White claims that his employment status was a property interest protected by the due process clause of the fourteenth amendment. A protected property interest in employment exists only where the employee has an express or implied right to continued employment. *McElwee v. Todd*, 581 F.2d 1182, 1183 (5th Cir. 1978). The source of such a right can be a state statute, a local ordinance, or an express or implied contract; whatever the source, it is clear that no such property interest is created by the Constitution, *Perry v. Sindermann*, 408 U.S. 593, 601, 92 S.Ct. 2694, 2699, 33 L.Ed.2d 570 (1972). Rather, "the sufficiency of the claim of entitlement must be decided by reference to state law." *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976). Accordingly, the due process question in this case is whether, under Mississippi law, White had the requisite express or implied right to continued public employment. White argues the existence of such a claim of entitlement can be derived from the controlling Mississippi statutes or implied from his oral employment contract with the Board.

If, under Mississippi law, White's employment could be terminated only for cause, he had a protected property interest in his employment; however, if he could be terminated at will, he did not. *Thompson v. Bass*, 616 F.2d 1259, 1265 (5th Cir. 1980). By statute in Mississippi, "[u]nless otherwise expressly fixed or provided by law, the heads of the departments hereinabove enumerated [the supervisor of the Oil and Gas Board is included] shall each select and appoint his or their respective subordinates, and may at any time remove a subordinate and appoint his successor." Miss.Code Ann. § 25–3–47. A specific statute in the oil and gas title provides that the supervisor, with the concurrence of the Board, shall employ all necessary personnel; the statute is silent on the question of firing Board employees. *Id.* § 53–1–9. Without reference to section 25–3–47, the trial judge found that section 53–1–9 contained an implied right of dismissal and held that since it "does not place any limitations on the power of the Supervisor and the Board to dismiss employees, . . . [they] have an 'uncontrolled discretion' in the matter of discharging employees . . . ."

The Board argues that, under section 25–3–47, the Board's supervisor could have fired White "at any time" "unless otherwise expressly fixed or provided by law." As section 53–1–9 modifies section 25–3–47 only to the extent of providing that the supervisor must have the concurrence of the Board to hire employees, the Board argues that the removal provision of section 25–3–47 remains applicable as is, or is impliedly modified to require the Board's concurrence to the supervisor's decision to terminate an employee. In other words, since section 53–1–9 does not mention the termination of employees, section 25–3–47 governs the issue; thus, the Board argues, White could be terminated at any time and thus did not have a property interest in his employment.

White responds, first, that section 25–3–47 is simply not applicable because the subject of employees of the Board is dealt with in a specific statute, section 53–1–9. He then argues that legislative silence on the question of termination in section 53–1–9

does not imply that employees may be terminated in the uncontrolled discretion of the Board. Rather, relying on *In re Bishop*, 211 Miss. 518, 52 So.2d 18 (1951), White argues that, under section 53–1–9, the Board is not the appointing authority (but only ratifies the supervisor's appointments), that the Board is detached from the day-to-day activities of its employees, and thus that it cannot fire an employee without providing him a hearing. In the alternative, White argues that even if section 25–3–47 would otherwise be applicable to the termination of a Board employee, it authorizes the supervisor only, and not the Board, to dismiss an employee at any time. Again relying on *In re Bishop, supra,* White argues that since the Board lacks appointing authority, it cannot dismiss without providing a hearing.

There are several weaknesses in this argument. First, as discussed, it seems that section 25–3–47 should govern the removal issue, since no other statute expressly provides otherwise. Second, *In re Bishop, supra,* involved the dismissal of a deputy where the applicable statute provided the sheriff could appoint deputies and remove them at pleasure, while the circuit court could not appoint deputies and could remove them "whenever in its opinion the public interest will be subserved thereby." The Mississippi Supreme Court found the quoted language, in the context of the rest of the statute, necessarily implied that the circuit judge could remove a deputy sheriff only for cause. In doing so, the court relied on the difference in the removal power provided for the sheriff (at pleasure) and the circuit court, as well as the fact that "the power of removal at pleasure . . . is much greater in the appointing agency then in the removing agency not having the power of appointment." 52 So.2d at 20. Here, in contrast to *Bishop,* there is no similar distinction in the statutes between the appointing and removing powers of the supervisor and the Board; the supervisor, in fact, is empowered by statute to enforce the provisions of the oil and gas title "under the direction of the board" and to enforce "all

rules, regulations and orders promulgated by the board." Section 53-1-7. The final difficulty with White's statutory construction argument relying on the separation of the supervisor and the Board is that it was not raised prior to this appeal.

White also argues that regardless of whether statutory law provided him with a property interest in his employment, his employment contract provided him a right to continued employment. Though he concedes that no express agreement was made as to the duration of his employment, he contends it was mutually understood that he was hired as a permanent employee. While the district court found that the Board hired White as a temporary employee, the permanent-temporary distinction is not controlling on this point because in Mississippi an agreement for "permanent" employment is terminable at the will of either party. *Sartin v. City of Columbus*, 421 F.Supp. 393 (N.D.Miss.1976), *aff'd without op.*, 573 F.2d 84 (5th Cir. 1978); *Kelly v. Mississippi Valley Gas Co.*, 397 So.2d 874 (Miss.1981); *Rape v. Mobile & O. R. Co.*, 136 Miss. 38, 100 So. 585 (1924). While an implied contract can be the source of a protected property interest in employment, it cannot do so in the absence of "mutually explicit understandings that support [the employee's] claim of entitlement." *Perry v. Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699. The district judge found an absence of any such "mutually explicit understandings" and further held that even if the oral contract had attempted to grant White a right to continued employment, it would have been unenforceable under the state's statute of frauds so that White would have been without a legitimate claim of entitlement to continued employment.

We conclude that White had no protected property interest in his position sufficient to sustain his claim of denial of due process.

### Evidentiary Question

At the Board's meeting in which it voted to dismiss White, John R. Loper, a staff employee, read a letter signed by ten other employees requesting that the Board reconsider its decision on White. Chairman Fancher, responding, indicated that the Board might hire a new, younger engineer. After the meeting, Loper wrote a memorandum to the other staff employees informing them of the meeting and mentioning Chairman Fancher's "younger-engineer" remark. At trial Loper could not recall the details of the meeting; White offered a copy of the memo that Loper had written to the other staff employees, but the trial judge refused to admit it.

While the memo meets the requirements for admissibility under Rule 803(5)—the Board concedes that point—its exclusion was not reversible error. Supervisor Davis testified that at the Board meeting Fancher "mentioned a young engineer with a career mind would be a better choice for the Board." Similarly, Fancher himself admitted at trial that he had said the Board perhaps would hire a younger engineer. Accordingly, the evidence contained in the Loper memo was merely cumulative. Its exclusion certainly did not affect the "substantial rights" of White. *Liner v. J. B. Talley & Co.*, 618 F.2d 327, 329 (5th Cir. 1980).

### Age Discrimination Claim

The trial judge held that White failed to establish a prima facie case of age discrimination. In the alternative, even if a prima facie case was made, the district court found the board had come forward with sufficient evidence of nondiscriminatory reasons for White's termination and that White had failed to prove the reasons were pretextual.

The trial court's finding that White did not make out a prima facie case is of questionable validity, since it rests in part on reasoning that he failed to show he was replaced by a nonprotected employee. In *McCuen v. Home Insurance Co.*, 633 F.2d 1150 (5th Cir. 1981), we held that a discharged employee need not show he was replaced by a nonprotected employee to make a prima facie showing. Rather, the inquiry is whether "he can demonstrate the

decision to discharge him was because of his age." *Id.* at 1152. While *McCuen* perhaps is distinguishable on its facts—it involved a work force reduction by which the 61-year-old plaintiff was discharged and two employees in arguably similar positions aged mid-forties and mid-fifties were retained—its statements that *McDonnell-Douglas* [*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668] "does not establish an immutable definition of a prima facie case" and that the question is whether plaintiff was discharged because of his age indicate White's failure to establish that he was replaced by a noncovered employee should not foreclose his claim.

■■■ The questions, then, are: (1) whether the Board met its burden of producing evidence tending to show White was discharged for legitimate, nondiscriminatory reasons; and (2) if so, whether White established, by a preponderance of the evidence, that the stated reasons were a mere pretext for a discriminatory discharge. *Harpring v. Continental Oil Co.*, 628 F.2d 406 (5th Cir. 1980). There can be no doubt that the Board met its burden with its showing, as found by the trial court, that White was terminated because: (1) the Board determined it did not need a "glorified field inspector" to coordinate the activities of its field inspectors and thus simply eliminated White's position; (2) the Board had limited funds and needed an engineer with "downhole" experience, which White lacked; and (3) the Board received numerous complaints from staff members concerning White's job performance, including his failure to follow the Board's orders and policies. Further, White was reported to have been asleep at his desk on five or six occasions.

As to White's proving these reasons were pretextual and that his discharge was due to his age, the only solid evidence that he offers is the comment by Fancher, noted above, that the Board would hire a new, younger engineer. While such a statement can be strong evidence of a discriminatory discharge, it does not necessarily mean the plaintiff was discharged because of his age. The Board argues, and the trial judge spe-

cifically found, that age was not a factor in the termination decision and that Fancher's remark was an afterthought relating simply to the hiring of a new engineer. In *Simmons v. McGuffey Nursing Home, Inc.*, 619 F.2d 369, 371 (5th Cir. 1980), our court accepted that argument with respect to a similar statement: "That a member of the Board wanted a younger man as [the discharged employee's] replacement does not mean that he was terminated because of his age."

White was 52 when he was hired and 54 when he was fired; the argument that the same Board that would hire a 52-year-old would fire him two years later because of his age is a strained one. Further, it is undisputed that when White was hired, seventeen of the Board's twenty employees were over age 40, with ten aged 52 or older. On the date of White's discharge, 17 of the Board's 22 employees were over 40 with 7 over age 54. These statistics certainly seem to indicate that the Board did not have a discriminatory attitude against older employees. We conclude that the trial court's findings in this respect are amply supported by the evidence and are certainly not clearly erroneous.

AFFIRMED.