Lillie **RUSSELL, et al., Plaintiffs,**

v.

**Dr. Robert W. HARRISON, et al., Defendants.**

**Civ. A. No. GC 82–284–GD–0.**

United States District Court, N.D. Mississippi, Greenville Division.

April 16, 1986.

Willie J. Perkins, Greenwood, Miss., Alvin O. Chambliss, Jr., Oxford, Miss., for plaintiffs.

Robert L. Gibbs, Gail Lowery, Asst. Attys. Gen., Jackson, Miss., for defendants.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

This cause comes before the court on the complaint of Louise Ball and Tommy Williams, Jr., former employees of Jackson State University in Jackson, Mississippi, wherein they allege deprivation of constitutionally protected rights and violations of Title 42 U.S.C. §§ 1981, 1982 and 1983. The plaintiffs seek damages as well as injunctive and declaratory relief. The claims of fifteen other original plaintiffs herein have been abandoned, resolved or previously dismissed. The only controversy remaining in subject litigation are the claims of the plaintiffs Ball and Williams. This matter was initially assigned to former Chief Judge William C. Keady, and the first evidentiary hearing had herein was on December 2, 1982, relative to the plaintiffs' motion for a temporary restraining order. At that initial hearing, the trial court held that the plaintiffs *sub judice* and the other original plaintiffs who were employees at Mississippi Valley State University had failed to establish their claim for federal equitable relief and the court accordingly refused to reinstate the plaintiffs in their former positions of employment. At that initial hearing, the trial court in announcing its opinion in open court specifically noted that the plaintiffs Ball and Williams, employees at Jackson State University, "[s]till have time to pursue their administrative remedies ... They may be able to resolve their problems in part or in whole administratively."

Subsequently, the trial court granted summary judgment for the defendants both as to the plaintiffs' claim for denial of substantive due process and procedural due process.[1] On appeal the Fifth Circuit Court of Appeals affirmed the district court as to the summary judgment in favor of the defendants on the issue of substantive due process and reversed and remanded with instructions as to the plaintiffs' claim for denial of procedural due process. The appellate court stated that the issue of whether the plaintiffs were provided a meaningful opportunity to respond to the reasons offered for their dismissal should have been addressed by the trial court. Further, the Fifth Circuit stated that the plaintiffs should be afforded the opportunity to present evidence on the issue of deni-

---

1. *Russell v. Harrison,* 562 F.Supp. 467 (N.D.    Miss.1983).

al of procedural due process.[2] The case was assigned to this court by order dated November 4, 1985. The trial was bifurcated because of the illness of plaintiff Ball and after separate hearings in which the plaintiffs testified extensively, the court proceeds to make its findings of fact and conclusions of law in this bench trial pursuant to Rule 52(a) of the Federal Rules of Civil Procedure.

## I. FINDINGS OF FACT

At its October 22, 1982, meeting, the Board of Trustees of Institutions of Higher Learning of the State of Mississippi determined and found that a state of dire financial emergency existed at Mississippi Valley State University and at Jackson State University. The Board of Trustees, pursuant to subject findings, directed the presidents of the institutions to take immediate and appropriate steps to restore a state of fiscal integrity at the institutions during the 1982–83 fiscal year. According to Dr. Peoples, the retired former president of Jackson State University, an analysis was made of staffing patterns after consultation with all of the vice-presidents on his staff, and accordingly, several positions were eliminated on the basis of the most efficient staffing per full-time student.

On or about November 18, 1982, both Mrs. Ball and Mr. Williams received letters from President Peoples stating that their positions were being eliminated and that they would be terminated as of December 31, 1982. The reason for termination was stated in subject letters to be the mandate of the Board of Trustees as to the state of financial emergency that existed at Jackson State University. The November 18, 1982, letters provided that, "If further clarification on this matter is necessary, or if assistance is needed in finding other employment, please contact the office of the president." The letters did not specifically state that the employees were entitled to a hearing relative to the termination of their positions. (Pl.Ex. 6, Pl.Ex. 8).

Mrs. Ball and Mr. Williams had executed employment contracts with the university on June 18, 1982, that provided for their employment for the school year 1982–83 for nine months commencing on August 23, 1982, and ending on May 16, 1983. (Pl.Ex. 5, Pl.Ex. 7). The contracts provided that the specified salary included therein could be increased or decreased depending on legislative appropriations, and that the employees could be terminated for malfeasance, inefficiency or contumacious conduct. There apparently is no issue in the case *sub judice* as to the reason for termination. The plaintiffs have never questioned the fact that financial exigencies existed at the university. The proof revealed that the positions of the plaintiffs herein as well as those of some eighty-eight other faculty and staff personnel were eliminated pursuant to the mandate of the Board of Trustees of Institutions of Higher Learning. It is further significant that the plaintiffs have not alleged that the fiscal exigency as stated in their notices was a pretext for an impermissible motive for termination, or that the elimination of the positions was implemented unreasonably or unfairly. It is further significant that the plaintiffs do not claim that the elimination of their positions was arbitrary and capricious or racially motivated.

Mr. Williams, a former assistant football coach at Jackson State University, had been employed by the institution for six previous years. During the 1982–83 school year, he was employed as an instructor in the Department of Health and had no coaching responsibilities. Mr. Williams testified that he was not aware of his right to a hearing relative to the termination. He stated that he was acquainted personally with President Peoples and had played football with him on the same college football team. Williams denied that he was aware of the provisions in the faculty handbook relative to a hearing procedure and denied that he had been furnished with a copy of the faculty handbook. He stated that after he received the November 18, 1982, letter that he consulted with his supervisor, the head of the Department of Health, and with the academic vice-president and that neither of these persons told

2. *Russell v. Harrison,* 736 F.2d 283 (5th Cir. 1984).

him that he was entitled to a hearing relative to his dismissal.

Mr. Williams acknowledged that he had testified in the December 2, 1982, hearing for a temporary restraining order and that he was present in court when the trial judge stated from the bench that he had certain administrative remedies relative to his termination which became effective on December 31, 1982. Mr. Williams testified that subsequent to his dismissal from Jackson State University that he was employed on a part-time basis as a substitute teacher in the Jackson, Mississippi, Public School System and that he traveled to California where he likewise did substitute teaching in the Los Angeles Public School System. Williams testified that his subsequent employment was at considerably less compensation than he had received as a member of the faculty at Jackson State University.

Mrs. Ball was employed at Jackson State University as an assistant professor in the Department of Reading. The 1982–83 school year was her third academic year at Jackson State University. She testified that after she received the notice of termination that she met with Dr. Peoples on November 24, 1982. Mrs. Ball denies that the president of the university told her that she had the right to a hearing and according to her testimony, the meeting with Dr. Peoples lasted for some five to eight minutes. She was told of the financial condition of the school and that there was little if anything that could be done to help her.

Subsequent to her termination, Mrs. Ball worked as a secretary, taught in the New Orleans Public School System and taught on a part-time basis in Maryland. Mrs. Ball acknowledged that she had testified in the December 2, 1982, hearing for a temporary restraining order in this court and that she was present in court when the trial judge stated that the employees at Jackson State University who would not be terminated until December 31, 1982, had certain administrative remedies that might solve their problems in whole or in part. Mrs.

Ball denied having a copy of the Jackson State University Faculty Handbook although she admitted that she attended the mandatory faculty seminars held in August 1980 and 1981 prior to the commencement of classes at the institution.

Dr. Peoples, the retired former president of Jackson State University, testified that the faculty handbook was distributed to each member of the faculty at a seminar that was held each August prior to the commencement of classes at the institution. Dr. Peoples related that the faculty seminars were mandatory, that each member of the faculty was required to attend the same each year, and that the faculty members were paid to attend these seminars that were conducted prior to the commencement of classes each year.[3]

The faculty handbook provides for the creation of a faculty personnel committee, the purpose of which is to provide for a hearing as part of the due process in cases relating to the discontinuation of service of faculty personnel. (p. 65 Handbook). The handbook further provides that termination of service of a person with continuing employment is made only under extraordinary circumstances because of (1) financial exigencies or (2) termination of programs, or (3) for cause. The publication further provides that if requested the administration of the institution shall arrange for a hearing where the dismissal or termination is for cause. (p. 79 Handbook). The faculty handbook provides for appellate procedures for a faculty member who has not been recommended for promotion or tenure by the tenure committee or the vice-president for academic affairs, as well as the president of the institution. (p. 83 Handbook).

Dr. Peoples testified that prior to the 1982 retrenchment pursuant to the Board of Trustees' mandate and the resulting letters to the plaintiffs herein dated November 18, 1982, that he conferred with all vice-presidents employed at the institution and requested that he be furnished with their recommendations relative to cutbacks

---

**3.** The faculty handbook was admitted into evidence as plaintiffs' Exhibit 9. The authenticity and admissibility of the handbook was stipulated to by the parties in the pretrial order relative to this cause.

to coincide with the budgetary restraints imposed by the Board of Trustees. He stated that the letters to the plaintiffs herein were transmitted only after the aforementioned consultation with his staff.

Dr. Peoples testified that although he had known plaintiff Williams personally for many years prior to 1982 that Mr. Williams did not discuss the matter of his termination with him nor did he request a hearing before the faculty personnel committee. Dr. Peoples related that Mrs. Ball did meet with him and that during the meeting he specifically told her that she was entitled to a hearing before the faculty personnel committee but that he could not guarantee any favorable result to her. Neither Mrs. Ball nor Mr. Williams requested a formal hearing before the president of the university or the faculty personnel committee or any other forum. Dr. Peoples testified unequivocally that had either plaintiff requested a hearing that the same would have been promptly provided. He stated that he would have convened the faculty personnel committee for the purpose of holding the appropriate hearings.

The plaintiffs called Dr. John Quincy Adams, III, a faculty member of Millsaps College, who is an officer in the Association of American University Professors. Dr. Adams testified that Mrs. Ball conferred with him prior to the hearing on the temporary restraining order had in this court on December 2, 1982, and that he had consulted with other faculty members at Jackson State University who were dismissed as a result of the reduction in staff

in 1982. Adams testified that in his opinion the procedure as set forth in the faculty handbook at Jackson State University did not provide for adequate due process remedies in the case of personnel dismissed for financial exigencies. He had recommended that Mrs. Ball continue to pursue her claim in this court, but apparently did not advise or counsel with her relative to any administrative remedy that she might have had at Jackson State University during December 1982. He apparently did become involved with another employee at a subsequent unrelated hearing.

The court finds as a matter of fact that the faculty handbook of Jackson State University was distributed to or made available to each faculty member at the August seminars held at the institution prior to the commencement of classes for each academic year. The court further finds that meaningful and adequate administrative remedies were available to the plaintiffs in the instant case.

The court finds as a matter of fact that both Mrs. Ball and Mr. Williams were aware of their right to a hearing and administrative remedies prior to their termination on December 31, 1986. The court in reaching this opinion attaches particular significance to the fact that the plaintiffs here were witnesses in the December 2, 1982, hearing for a temporary restraining order in this court. The trial court questioned each of them in some detail as to their knowledge concerning their right to a hearing and administrative relief.[4] In its opinion stated orally in open court, with the

4. A. During the examination of plaintiff Williams at the December 2, 1982, hearing, the following exchange took place (p. 85 of record):

The Court: Do you have an employee's handbook there?
Mr. Williams: No, sir, do I have one?
The Court: No. Does Jackson State have one?
Mr. Williams: Yes.
The Court: Have you read it?
Mr. Williams: Yes.
The Court: Do you know what it provides about a hearing procedure in case of dismissal of an employee?
Mr. Williams: Go through steps—
The Court: You know there are administrative steps you go through?

Mr. Williams: Yes, I went through the first step, which was one through my superior. I thought maybe she had something to do with it but she didn't.
The Court: You didn't take it further?
Mr. Williams: No.
The Court: You didn't take it to the president?
Mr. Williams: No, I didn't go there myself.
B. During the examination of plaintiff Ball at the December 2, 1982, hearing, the following exchange took place (p. 93 of record):
The Court: Did you request a hearing before him?
Mrs. Ball: Before him?
The Court: Before the board. Did you request to be heard?
Mrs. Ball: No, I did not.

plaintiffs herein in attendance, the trial court stated that the Jackson State employees had time to exercise certain administrative remedies prior to their termination on December 31, 1982. It is accordingly the opinion of the court that the plaintiffs knowingly failed to pursue the administrative remedies that were available at Jackson State University.

## II. CONCLUSIONS OF LAW

■ The plaintiffs herein undisputably had a property interest in continued employment with Jackson State through May 1983. In cases of this nature, the minimum requirements of procedural due process are well defined. The Court of Appeals for the Fifth Circuit has held that, prior to termination, public employees with a property interest in their jobs must receive: (1) notice of the reasons for their termination, and (2) an effective opportunity to rebut those reasons. *Russell v. Harrison,* 736 F.2d 283, 289 (5th Cir.1984); *Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980); *Thurston v. Dekle,* 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds,* 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978); *see also Levitt v. University of Texas at El Paso,* 759 F.2d 1224, 1228 (5th Cir.1985).

In the instant case, it has previously been held that the notice requirement has been satisfied. This court must now determine whether the plaintiffs herein were provided with an effective opportunity to rebut the reasons for their termination. In making this determination, the court is mindful of the fact that procedural due process standards are not "wooden absolutes." *Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970). Rather, whether the procedures employed in a given case are sufficient "must be judged in the light of the parties, the subject matter, and the circumstances involved." *Id.* With these guidelines in mind, the court proceeds to analyze the case *sub judice.*

Mr. Noble: Were you aware you could get a hearing?
Mrs. Ball: No, I was not aware, but I am now.
The Court: You say you are aware now?
Mrs. Ball: That I can get a hearing.

■ Faculty members that have a property interest in their continued employment have a right to notice and a hearing, *at their request,* where they can be informed of the grounds for their termination and can challenge the sufficiency of those grounds. *Perry v. Sindermann,* 408 U.S. 593, 603, 92 S.Ct. 2694, 2700, 33 L.Ed.2d 570 (1972); *Bignall v. North Idaho College,* 538 F.2d 243, 246 (9th Cir.1976). *Accord Cleveland Board of Education v. Loudermill,* 470 U.S. ——, 105 S.Ct. 1487, 84 L.Ed.2d 494, 506 (1985). The law does not require that this opportunity for a hearing precede the decision to terminate certain faculty members, rather, case law only mandates that the opportunity for a hearing be granted "at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62, 66 (1965); *see also Mathews v. Eldridge,* 424 U.S. 319, 333, 96 S.Ct. 893, 902, 47 L.Ed.2d 18, 32 (1976); *Breath v. Cronvich,* 729 F.2d 1006, 1010 (5th Cir.1984), *cert. denied,* —— U.S. ——, 105 S.Ct. 332, 83 L.Ed.2d 268 (1984). If the opportunity for a hearing is made available to public employees scheduled to be terminated before the termination becomes effective, these procedural due process requirements are satisfied. Faculty members have "not been denied due process while still employed at the same job and while adequate procedures remain to challenge and forestall" their termination. *Bignall,* 538 F.2d at 246.

■ Both the plaintiffs herein have indicated that they were aware that Jackson State would provide them with a hearing. Although the faculty handbook does not explicitly provide for a pretermination hearing for employees who are terminated because of financial exigencies, the uncontradicted proof establishes that had Dr. Peoples been furnished by either plaintiff herein with a request for a hearing, he would have convened the faculty personnel committee for the purpose of holding such a

The Court: That you can get a hearing through the Jackson State administration.
Mrs. Ball: From what I am hearing here in this courtroom.
The Court: In this courtroom.

hearing. Where no established hearing procedures exist, an institution may adopt any method that will adequately comply with procedural due process requirements. *Ferguson,* 430 F.2d at 856.

The plaintiffs in the instant case were informed of their impending termination on November 18, 1982. The termination was not to become effective until December 31, 1982. The plaintiffs thus had adequate time in which to request a hearing before their termination was to become effective. They chose, however, not to pursue the hearing, and instead, returned to the district court.

▮ While it is true that plaintiffs in a § 1983 action usually are not required to exhaust their administrative remedies, *Ellis v. Dyson,* 421 U.S. 426, 432–33, 95 S.Ct. 1691, 44 L.Ed.2d 274 (1975), it is also true that where the administrative process was not designed to be remedial, but instead, " 'provide[s] a means for forestalling a threatened future deprivation of civil rights,' " the plaintiffs are required to pursue the available procedural remedies. *Bignall,* 538 F.2d at 246 (quoting *Whitner v. Davis,* 410 F.2d 24, 28 (9th Cir.1969)). Faculty personnel cannot contend that they did not obtain a hearing concerning the termination of their employment when they chose not to avail themselves of an opportunity to challenge the grounds for their termination. *See United States v. An Article of Device Theramatic,* 715 F.2d 1339, 1343 (9th Cir.1983), *cert. denied sub nom Cloward v. United States,* 465 U.S. 1025, 104 S.Ct. 1281, 79 L.Ed.2d 685 (1984) (citing *Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 610, 94 S.Ct. 1895, 1901, 40 L.Ed.2d 406, 415 (1974)). *See also Allen v. Lovejoy,* 406 F.Supp. 359, 362 (W.D.Tenn.1975), *aff'd in part, reversed in part,* 553 F.2d 522 (6th Cir.1975) (state employees must pursue procedures provided by state employer before they will be allowed to assert that they have been deprived of property without due process).

▮ The due process right to a hearing "does not comprehend in every case actual participation in a hearing as distinct from the opportunity to participate." *Local 130,*

*International Union of Electrical Radio & Machine Workers v. McColloch,* 345 F.2d 90, 94 (D.C.Cir.1965). Where faculty members know that the opportunity for a hearing is available to them and choose to forego that opportunity, they act to their peril, "at least as regards any subsequent claim that there was a procedural due process lapse." *Id. See also Allen,* 406 F.Supp. at 362 (public employees cannot voluntarily spurn an available hearing and later bring a federal action asking for relief from their own decision).

In the instant case, the plaintiffs had been advised of the reasons for their termination. At that point, it was incumbent upon them to initiate any review proceedings. *Cook v. Hudson,* 365 F.Supp. 855, 860 (N.D.Miss.1973), *aff'd,* 511 F.2d 744 (5th Cir.1975), *reh'g denied,* 515 F.2d 762, *cert. granted,* 424 U.S. 941, 96 S.Ct. 1408, 47 L.Ed.2d 347, *cert. dismissed,* 429 U.S. 165, 97 S.Ct. 543, 50 L.Ed.2d 373 (1976). Since the plaintiffs did not pursue their opportunity for a hearing, they cannot now complain that they were denied due process.

The court holds that meaningful procedural due process was available to the plaintiffs in the case *sub judice.* Accordingly, a separate judgment will be entered for the defendants.