**Clarence A. ROBINSON, Plaintiff,**

v.

**Dr. Joe L. BOYER, Defendant.**

**Civ. A. No. GC 84 90 GD 0.**

United States District Court,
N.D. Mississippi, E.D.

Sept. 11, 1986.

Frederick B. Clark, Greenwood, Miss., for plaintiff.

Robert L. Gibbs, Jackson, Miss., for defendant.

## MEMORANDUM OPINION

DAVIDSON, District Judge.

The plaintiff Clarence A. Robinson brings this action for alleged violations of his First Amendment rights of free speech and association and his Fourteenth Amendment guarantees of procedural and substantive due process and equal protection. Robinson alleges that Dr. Joe L. Boyer, President of Mississippi Valley State University, violated his constitutional rights under color of state law, entitling him to monetary and injunctive relief pursuant to 42 U.S.C. § 1983. The court, having heard the matter without a jury, and concluding that it has jurisdiction pursuant to 28 U.S.C. § 1331, hereby records its findings of fact and conclusions of law pursuant to Rule 52 of the Federal Rules of Civil Procedure.

### Findings of Fact

Robinson was hired by Mississippi Valley State University (MVSU or "State") on September 25, 1978 as a law enforcement officer. Prior to that time, Robinson had served in the United States Army with 20 years of experience as a military policeman and had attained the rank of Sgt/1st Class E–7. Robinson was employed on a year to year basis since he was neither a faculty member nor the recipient of a tenure position. Robinson continued in his employment as a law enforcement officer for

State until December 1, 1982 when he was promoted to the position of Acting Coordinator of Security. On June 30, 1983, Robinson and Dr. Boyer signed a contract for the period July 1, 1983 through June 30, 1984. Some time during this period, Finley Horton, Chief Fiscal Officer of Mississippi Valley State University and the plaintiff's immediate supervisor, became dissatisfied with Robinson, not because of his law enforcement abilities, but because Robinson persisted in refusing to implement Horton's orders and recommendations. Horton testified that Robinson refused to conduct fire drills on a regular basis, failed to adequately warn and discipline officers for breaches of duty, failed to develop a fire prevention plan for the campus, failed to develop a building security plan, failed to submit copies of staff meeting minutes to Horton, refused to conduct seminars with students, refused to employ a foot patrol on campus and refused to implement a five-man patrol to reduce overtime to aid the University in acting within its budgetary constraints. Horton testified that the state had no money budgeted for overtime and that Robinson had never requested Horton's permission to work employees overtime. As a result of Robinson's actions, Horton verbally told Robinson that he would recommend termination if Robinson continued to refuse to comply with Horton's orders and requests. Horton testified that when it finally become apparent to him that Robinson would never comply with his recommendations and operate the security force as necessitated by economic restrictions, Horton recommended in writing to Dr. Boyer that Robinson be terminated for "contumacious conduct," giving several examples to support this charge.

In response to Horton's recommendation, Dr. Boyer testified that it was his duty to receive recommendations from supervisors who wished to terminate employees and to advise them of the procedures to be taken for termination. After reviewing the information, Dr. Boyer notified Robinson by letter that he was being terminated effective January 31, 1984. In the letter, Dr. Boyer also notified Robinson of his right to appeal the decision using the procedures outlined in the "Personnel Factbook." By letter dated January 24, 1984, Robinson requested a hearing on his termination and by letter dated January 27, 1984, Percy Washington, Director of Personnel at State, notified Robinson that the reason for his termination was a charge of "Contumacious Conduct". In his letter, Washington also notified Robinson that the principal witness for the University would be Finley Horton, Robinson's immediate supervisor. Washington stated therein that other administrative and staff personnel might be called to testify on behalf of the University as well. (Plaintiff's exhibit 3).

The hearing on the matter took place on February 6, 1984. The committee, in compliance with the Mississippi Valley State Personnel Factbook, was composed of three persons from the faculty and University staff. These individuals were Dr. David Wicks, Dr. Joe Curtis and Ms. Doris Jackson. The plaintiff was allowed to call several witnesses, to cross-examine Horton and introduce matters into evidence. At the conclusion of the testimony, the arbiters were again informed that the termination was due to contumacious conduct and were asked to respond to the question, "Does the evidence presented support the rationale for the decision made?" In response, Dr. Wicks stated:

No, the evidence presented did not support the decision made because it (the evidence) was not preponderant and convincing. In addition, the "Termination of Employment" procedures outlined on pages 15–18 in the *MVSU Personnel Factbook, 2 n.d. ed.*, were not followed.

Dr. Curtis similarly stated:

In my opinion, the evidence presented *does not* support the rationale for the decision made.

The evidence presented does not substantiate insubordinate conduct, except in the failure of Mr. Robinson to conduct fire drills in August and September of 1983. However, in reviewing the job description for Director of Security on page 133 of the Administrative Handbook, I

found no reference to fire protection. In addition, no evidence was presented to show that Mr. Robinson was told in writing that his conduct was insubordinate, nor that further conduct of a similar nature would lead to his termination.

There does not appear to be a clear pattern of disregard for supervisory directives. There does, however, appear to be areas of legitimate disagreement.

Doris Jackson replied in response to the query:

Yes—As an employee in the Personnel Office, I am aware that most positions, teaching & non-teaching, require flexibilities in duties—All employees are often asked to perform some task that may not be considered as having direct relationship to their routine duties. Also, with recent cut back in staff and the period of austerity we are facing, I feel any additional duty assigned by supervisors should be accepted in a positive manner by the employee and performed to the best of their knowledge and/or ability.

Though there was only one clear affirmative answer, Dr. Boyer testified that he treated the responses as one and one-half of the responses as supporting the rationale for the decision and one and one-half opposed to the rationale. Dr. Boyer explained, in essence, that Dr. Curtis' answer indicated that he somewhat believed that Robinson had committed some acts of insubordination, contrary to Curtis' overall conclusion. As a result of the votes of the arbiters and Dr. Boyer's interpretation of their votes, Boyer decided to uphold the decision to terminate the plaintiff as expressed in a letter to Robinson dated February 13, 1984. (Plaintiff's exhibit 8).

The hearing transcript, admitted into evidence as defendant's exhibit no. 8, reaffirms much of the testimony presented at trial. Therein, Horton expressed dissatisfaction with Robinson's repeated refusal to place letters in his employees' personnel files concerning their rather high rate of absenteeism, Robinson's refusal to implement a five-man shift schedule and his further refusal to eliminate overtime. Another act of insubordination cited in the testimony was Robinson's refusal to fill the tanks of University vehicles with gasoline. Robinson responded that he did not believe his employees should be required to perform this duty since his force was not only understaffed but overworked. (Transcript, p. 31). Also Horton testified that Robinson did not believe that crowd control and the assurance of the availability of restrooms for certain sporting events were matters with which his security force should be concerned. (Transcript, p. 4).

The testimony, both at the hearing and at trial, in sum, indicates a major philosophical difference between Robinson on the one hand and Horton and Boyer on the other as to the proper nature of Robinson's duties. Robinson believed that his duties primarily consisted of police work, including the investigation of crimes, the collection of evidence and the arresting of suspects. Horton and Boyer testified that Robinson's duties, in view of the budgetary and personnel constraints, were that of a security force that should perform duties such as crowd control, the conducting of educational seminars and the development and implementation of fire prevention and building security plans. As Horton stated at the hearing, "Our Security Group is a security group—it is not a Police Department. It is not. We have decided it is not. Dr. Boyer has decided it is not." (Transcript, p. 12).

Robinson also testified that he thought that one of the reasons for his termination, if not the sole reason, was the fact that he was living on campus with a woman to which he was not married, citing to a portion of Dr. Boyer's deposition. However, Dr. Boyer testified that although he knew of Robinson's living arrangement because it was common knowledge to faculty and students alike, that he based his decision to uphold Horton's recommendation of termination on the report of the hearing. The hearing report contained no references to Robinson's living arrangement since the matter was not a subject of the hearing.

Robinson further alleges that one member of the Hearing Committee, Doris Jackson, was biased against Robinson and that she had always voted for the administration when she sat on previous hearing committees. However, Jackson and Dr. Boyer both testified that at least on one other occasion, Jackson had voted against the administration. Further, Jackson testified that she acted impartially while serving on Robinson's Hearing Committee and that her vote reflected an unbiased decision. On Jackson's cross-examination, Robinson failed to impeach her or introduce any proof to support his allegation that Jackson did not vote her conscience.

Finally, Robinson testified that he had expectations of continued employment subsequent to June 31, 1984 with MVSU because of a conversation with Willie Gray, the former Coordinator of Security, who hired Robinson. Robinson testified that Gray told him that, according to University policy, an employee would be recommended for continued employment after successfully completing a six-month probationary period. Robinson also testified that after notice of his termination, Dr. Boyer told his attorney that if Robinson were terminated, Robinson would be retained as a special investigator. William Stewart, associate professor of mathematics at MVSU also testified that Boyer had made a similar statement. However, on Robinson's cross-examination, he admitted that there had never been a position of special investigator at MVSU and Dr. Boyer testified, and the court agrees, that a mockery of Robinson's termination as Coordinator of Security would occur if Robinson were immediately rehired as a special investigator. Further, Fiscal Officer Horton testified at trial and at the hearing that, due to Robinson's refusals to implement Horton's suggestions and Horton's verbal warnings that Robinson would be terminated if the recommendations were not followed, Robinson knew that his job performance was not satisfactory and that any expectation of continued employment was unfounded. (Transcript, pp. 16, 17).

From the testimony and documentary evidence presented at trial, the court finds as a matter of fact that Robinson and his superiors had conflicting views as to the proper nature of Robinson's duties; that Robinson was terminated because of his repeated refusals to comply with Horton's suggestions and recommendations, and not because of Robinson's living arrangement, Robinson's criticisms of the University's view or any other reason; that Doris Jackson voted her conscience and was not biased against Robinson; and that Robinson did not have a reasonable expectation of continued employment subsequent to June 1984 with the University in any capacity since he had demonstrated to his superiors that he would follow their orders and recommendations only if he agreed with them.

### Conclusions of Law

Having addressed the factual issues, the court proceeds to discuss those legal issues raised by the plaintiff. In his complaint, the plaintiff alleged that his constitutional rights of due process, equal protection, freedom of speech and of association were violated by the defendant's actions. In his pretrial brief, the plaintiff conceded that his discovery was insufficient to support his equal protection claim. Therefore, this claim will not be discussed.

#### 1st Amendment Claims

■ Turning first to the alleged violations of the first amendment rights of freedom of speech and of association, it is settled that even when there has not been a deprivation of a protected interest, the non-renewal of a non-tenured public employee's contract may not be predicated on the plaintiff's exercise of first amendment rights. *Perry v. Sindermann,* 408 U.S. 593, 597–98, 92 S.Ct. 2694, 2697–98, 33 L.Ed.2d 570 (1972); *Montgomery v. Boshears,* 698 F.2d 739, 743 (5th Cir.1983). However, the burden of proof rests on the plaintiff to show that his alleged protected conduct or speech was a "substantial" or "motivating" factor in the University's decision not to rehire. 698 F.2d at 743. Once the plaintiff has met his burden of proof,

the University must then demonstrate by a preponderance of the evidence that it would have reached the same decision to terminate in the absence of the plaintiff's conduct. *Id.* (citing *Mt. Healthy City Schl. Dist. v. Doyle*, 429 U.S. 274, 287, 97 S.Ct. 568, 576, 50 L.Ed.2d 471 (1977)). In its findings of fact, the court found that the reason for Robinson's termination was his repeated refusals to comply with Horton's orders and recommendations because of a philosophical difference between Robinson and his superiors as to the security force's proper role. Accordingly, it is the conclusion of the court that Robinson has failed to meet his burden of proof that his criticisms of the University's view of his proper duties were a "substantial" or "motivating" factor in the decision to terminate and not rehire him or that he was terminated in retaliation for his exercise of his free speech rights.

Robinson's alleged violation of his right of association stems from his belief that a motivating factor in the decision to terminate him was his cohabitation with an unmarried female. Pursuant to its findings of fact, the court likewise concludes that Robinson's living arrangement was not a "substantial" or "motivating" factor in the decision not to rehire. Therefore, even assuming that the living arrangement was constitutionally protected, Robinson's claim must fail since the decision to terminate or not to rehire would have been made absent the constitutionally protected activity. *Mt. Healthy City Schl. Dist. v. Doyle*, 429 U.S. at 287, 97 S.Ct. at 576.

*Procedural Due Process Claims*

■ Robinson contends that his procedural due process rights were violated not only with regard to his employment for the year from July 1, 1983 through June 30, 1984 but also subsequent to this time because he alleges that he had a continued expectation of employment after June 30, 1984 resulting from alleged statements made by Willie Gray and Dr. Boyer. Addressing Robinson's latter argument first, a protected property interest in employment only exists when the employee has a

legitimate claim of entitlement to the position. Such a claim can be derived from a state statute, a local ordinance, a rule, or a "mutually explicit understanding." *White v. Mississippi State Oil & Gas Bd.*, 650 F.2d 540, 543 (5th Cir.1981), (citing *Perry v. Sindermann*, 408 U.S. at 601, 92 S.Ct. at 2699). This court found, as a matter of fact, that there were not mutually explicit understandings to support Robinson's claim of entitlement to employment after June 30, 1984. Such a claim cannot be derived from Mississippi Code Annotated, § 37-101-15 (Supp.1985), providing that the Board of Trustees of a state university "shall have the power and authority to terminate [employment] contract[s] at any time for malfeasance, inefficiency, or contumacious conduct ...," since this statute has been held to not create a reasonable expectation of continued employment. *Montgomery v. Boshears*, 692 F.2d at 742. There being no local ordinance or rule to support a reasonable expectation of continued employment subsequent to June 30, 1984, Robinson's claim of a violation of procedural due process as to this time period must fail.

Public employment which provides for termination only "for cause" creates a constitutionally protectable property interest. *Thurston v. Dekle*, 531 F.2d 1264, 1272 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978). Having been created, the property interest in employment could not be destroyed without due process of law. *Id.* Since under Mississippi Code Annotated § 37-101-15(f) (Supp.1985), Robinson could be terminated only for cause, then he had a protected property interest in employment until June 30, 1984. Because of this property interest, Robinson was entitled to receive (1) notice of the reasons for his termination and (2) an effective opportunity to rebut those reasons. *Thurston v. Dekle*, 531 F.2d 1264, 1273 (5th Cir.1976), *vacated on other grounds*, 438 U.S. 901, 98 S.Ct. 3118, 57 L.Ed.2d 1144 (1978); *Russell v. Harrison*, 632 F.Supp. 1436, 1441 (N.D. Miss.1986). According to the Fifth Circuit, effective rebuttal means "giving the em-

ployee the right to respond in writing to the charges made and to respond orally before the official charged with responsibility of making the termination decision." *Glenn v. Newman,* 614 F.2d 467, 472 (5th Cir.1980). Observing these requirements, the court is of the opinion that Robinson was not given the opportunity to effectively rebut the charge made against him prior to his termination. In the *Glenn* decision, the Fifth Circuit likewise held that the pre-termination procedures provided the plaintiff therein were inadequate. 614 F.2d at 472. Yet, the court concluded:

> Nevertheless, we find that any error involved was cured in the subsequent public hearing before the Mayor and City Council. *See Blair v. Robstown Independent School District,* 556 F.2d 1331, 1334–35 (5th Cir.1977); *Thurston v. Dekle,* 531 F.2d at 1269. In the post-termination proceedings, Glenn received notice of the charges against him and was given sufficient time to prepare for the hearing. At the hearing, he was represented by an attorney who examined and cross-examined witnesses on his behalf, and he was allowed to present his case orally.

614 F.2d at 472.

■ Further, the Fifth Circuit has countenanced the dispensation of a pre-termination hearing when:

> (1) the deprivation is directly necessary to secure an important government or general public interest, (2) there is a special need for very prompt action, and (3) the person initiating the seizure has been a government official responsible for determining, under the standards of a narrowly drawn statute, that it was necessary and justified in the particular instance.

*Breath v. Cronvich,* 729 F.2d 1006, 1010 (5th Cir.), *cert. denied,* 469 U.S. 934, 105 S.Ct. 332, 88 L.Ed.2d 268 (1984). Given Robinson's position as Coordinator of Security and his belief that crowd control and implementation of fire prevention plans were not part of his duties, a need for prompt action existed and such action was

in the public interest. *See Pickering v. Bd. of Education,* 391 U.S. 563, 570, 88 S.Ct. 1731, 1735–36, 20 L.Ed.2d 811 (1968) (difference of opinion between teacher and Board as to preferable manner of operating school district was clearly an issue concerning general public interest.)

The defendant also argued that any procedural due process defect was cured by Robinson's post-deprivation remedy of an action in state court for breach of contract. The state court case settled and Robinson received damages to compensate him for his loss of employment from January 31, 1984 to June 30, 1984. A post-deprivation remedy is adequate when "quick action by the government is necessary or the provision of pre-deprivation process is impracticable, if the post-deprivation remedy is afforded 'at a meaningful time and in a meaningful manner.' " *Gilmere v. City of Atlanta,* 737 F.2d 894, 906 (11th Cir.1984) (citing *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *partially overruled on other grounds, Daniel v. Williams,* — U.S. —, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986)). Due to Robinson's refusal to follow orders issued by his superiors, a legitimate argument can be made that the administration believed quick action was necessary. However, the defendant introduced no evidence to this effect. The court therefore chooses not to rely on this legal argument to support its conclusion that any procedural due process defect was cured.

*Substantive Due Process*

A basic constituent of minimum due process is a fair and impartial decision maker. *Megill v. Bd. of Regents,* 541 F.2d 1073, 1079 (5th Cir.1976). Robinson contends that he was never granted a fair and impartial forum in which to vindicate himself. In support of this proposition, Robinson states that one member of the Hearing Committee, Doris Jackson, was an employee of the Personnel Office who allegedly had never voted against the University administration. Also, Robinson contends that Dr. Boyer acted arbitrarily and capriciously by upholding the termination decision even

though two of the three members on the Hearing Committee held that the evidence presented at the hearing did not support the rationale for the decision to terminate.

■ The Personnel Factbook provides that the Hearing Committee will be composed of a representative from the personnel office and two budgetary officers designated by the President. The Personnel Factbook further provides that the "decision of the Committee will be final *subject to* review by the President." (emphasis added). Therefore, the Hearing Committee in Robinson's case consisted of those members prescribed by the Personnel Factbook. As to the alleged impartiality of Doris Jackson, both Dr. Boyer and Jackson testified that, at least on one other occasion, Jackson had voted against the University. Robinson failed to introduce any other evidence to support his allegation. Accordingly, the court found as a matter of fact that Jackson's decision was not the result of bias. Robinson's proof is also deficient by law. *See Megill v. Bd. of Regents,* 541 F.2d at 1079 (mere allegations of bias not sufficient to support violation of due process claim).

■ As to the allegation that Dr. Boyer acted arbitrarily and capriciously in upholding the decision to terminate in light of the Hearing Committee's decisions, the court again notes that the Personnel Factbook provides that the Committee's decision is subject to the President's review. The court further notes that the plaintiff has been compensated for all damages resulting from any breach of contract for the 1983–84 school year. Therefore, the only issue is whether Robinson is entitled to reinstatement, back pay as to his date of termination or any other damages occurring subsequent to June 1984. As stated in the court's findings of fact, Robinson based his allegation that he had an expectancy of continued employment on a purported statement by the former Coordinator of Security that after six months all employees became permanent employees and Dr. Boyer's reported statement to Robinson's attorney that Boyer would hire Robinson

as a special investigator. As stated in *White v. Mississippi State Oil & Gas Bd.,* 650 F.2d 540 (5th Cir.1981) (applying Mississippi law), the "permanent-temporary distinction is not controlling ... because in Mississippi an agreement for 'permanent' employment is terminable at the will of either party." *Id.* at 543. This court found, as a matter of fact, that Boyer did not state that Robinson would be or might be hired as a special investigator. Accordingly, since Robinson had no expectation of continued employment and therefore, no property interest in employment after June 31, 1984, Robinson cannot validly assert any substantive due process rights to employment after June 1984. *Thompson v. Bass,* 616 F.2d 1259, 1264 (5th Cir.), *cert. denied,* 449 U.S. 983, 101 S.Ct. 399, 66 L.Ed.2d 245 (1980) (claimant not entitled to procedural and substantive due process when his state employment is terminated unless he has property interest in continued employment).

### Eleventh Amendment Immunity

Robinson claims that he sued Dr. Boyer in both his official and individual capacities even though Robinson's complaint only named Mississippi Valley State and Dr. Joe Boyer as defendants without specifying whether Boyer was being sued in his official and/or individual capacity. Assuming the violation of a constitutional right by Dr. Boyer, monetary damages against him in his official capacity are barred by the Eleventh Amendment. As stated in *Campbell v. Bowlin,* 724 F.2d 484 (5th Cir.1984), "Actions for damages against a party in his official capacity are, in essence, actions against the governmental entity of which the officer is an agent. (citations omitted). Thus, damages may be awarded against a defendant in his official capacity if they would be available against the governmental entity itself." 724 F.2d at 489 n. 4. This court ruled in its order dated October 9, 1985 that MVSU was immune from monetary or injunctive relief citing, e.g., *United Carolina Bank v. Bd. of Regents,* 665 F.2d 553 (5th Cir.1982). Although prospective

injunctive relief is available against a state official, *United Carolina Bank*, 665 F.2d at 565, the court has held that Dr. Boyer violated none of Robinson's constitutional rights that were not subsequently cured so as to entitle Robinson to injunctive relief. Recovery against Dr. Boyer in his individual capacity cannot be obtained absent a showing that Dr. Boyer violated clearly established constitutional rights which a reasonable person would have known. *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982); *Campbell v. Bowlin*, 724 F.2d at 489. Preliminary to this showing, however, Robinson must first demonstrate that constitutional violations occurred. Pursuant to the court's rulings, Robinson has failed in his attempt.

For these reasons, the court enters its judgment in favor of defendant Boyer.