Leo SCANLON, M.D., Plaintiff,

v.

DEPARTMENT OF MENTAL HEALTH; State Board of Mental Health; Dr. Richard Rhoden; Dr. H.E. Wood, Jr.; Mrs. Johnnie Kelso; J.C. Williamson; William Buford; Robert Lott; Gwen Loper; Dr. Gilbert Macvaugh, Jr.; and Dr. L.D. Corsey, Individually and in their Official Capacities as Members of the State Board of Mental Health, Defendants.

Civ. A. No. J92–0710(L)(N).

United States District Court,
S.D. Mississippi,
Jackson Division.

June 18, 1993.

John F. Simon, Jr., Robert L. Wells, Young, Scanlon & Sessums, Jackson, MS, for plaintiff.

T. Hunt Cole, Mississippi Atty. General's Office, Mark P. Caraway, Wise, Carter, Child & Caraway, Jackson, MS, for defendants.

## MEMORANDUM OPINION AND ORDER

TOM S. LEE, District Judge.

This cause is before the court on the motion of all defendants to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff, Leo Scanlon, M.D., has responded to defendants' motion and the court has considered the memoranda of authorities submitted by the parties in ruling on the motion. For the reasons that follow, the court concludes that defendants' motion is well taken and should be granted.

## INTRODUCTION

Plaintiff has instituted this action under 42 U.S.C. § 1983 alleging that he was denied reappointment to his position on the medical staff at the Mississippi State Mental Hospital at Whitfield, Mississippi without procedural due process. Plaintiff seeks declaratory, injunctive and monetary relief as a result of this alleged deprivation of his protected property and liberty interests in violation of the Fourteenth Amendment to the United States Constitution. Named as defendants are the Mississippi Department of Mental Health, the State Board of Mental Health, and the appointed members of the State Board of Mental Health in both their official and individual capacities. The Mississippi Department of Mental Health and the State Board of Mental Health have moved for dismissal of plaintiff's complaint on the ground that the Eleventh Amendment bars plaintiff's bringing of this action against them in federal court. Each of the individual Board members has moved for dismissal on numerous grounds, one being that plaintiff had no constitutionally protected property interest in his employment so that the failure to reappoint him to the medical staff did not implicate due process requirements under the Fourteenth Amendment. These defendants also maintain that dismissal is warranted as to Dr. Scanlon's deprivation of liberty claim since he has not set forth sufficient allegations to state such a claim.[1] Of course, for purposes of this motion, the factual allegations made in plaintiff's complaint must be accepted as true.

## PLAINTIFF'S FACTUAL ALLEGATIONS

In August 1982, plaintiff, a licensed physician in the State of Mississippi, applied for and was granted employment at the State Mental Hospital in Whitfield, Mississippi. As part of his employment, Dr. Scanlon was given a copy of the by-laws of the medical staff at the hospital. Periodically, those by-laws were amended and the amendments were circulated to physicians employed at the hospital. The by-laws were considered to be and were treated as rules and regulations governing the employment relationship be-

---

1. An additional argument made by defendants in support of dismissal of plaintiff's claims is that Mississippi law provides an adequate post-deprivation remedy of which Dr. Scanlon did not avail himself, and, thus, he cannot now complain of being denied due process. *See Browning v. Odessa*, 990 F.2d 842 (5th Cir.1993) (citing cases). According to the defendants, Dr. Scanlon was entitled to appeal the denial of his reappointment by the State Board of Mental Health to the Hinds County Chancery Court under Miss.Code Ann. § 73–25–92 (Supp.1988). Dr. Scanlon counters, however, by pointing out that the appellate remedy provided by that statutory provision applies only if a physician was denied or revoked hospital privileges for one of three specific reasons,

and since he was never notified of the reason(s) as to why he was not reappointed to the medical staff, he could not take advantage of the procedural safeguards.

Having considered the parties' arguments, the court finds that dismissal for failure to state a claim would not be proper on this ground. Dr. Scanlon has pled that even up to the time of filing his complaint, he had never received notice of the reasons for the Board's decision. The court must accept this allegation as true, and consequently, the court cannot conclude that the post-deprivation remedy provided by Miss.Code Ann. § 73–25–92 was actually "available" to Dr. Scanlon so as to preclude his claim for denial of due process.

tween the hospital and the physicians on the medical staff, including Dr. Scanlon. In matters concerning the physicians at the hospital, the hospital sought to follow and enforce the by-laws as rules and regulations of continued employment of physicians.

The by-laws require that all physicians reapply for continuation of their employment and medical staff privileges every two years. As part of that reappointment process, a "credentials committee" would review a particular physician's records and recommend whether to approve or deny reappointment of the physician. The credentials committee's recommendation would be sent to an "executive committee" of the medical staff who would vote to accept or reject the recommendation of the credentials committee. Both of those committees' recommendations would then be passed on to the "clinical director," who would determine whether or not to reappoint the physician. The decision of the clinical director was then submitted to the State Board of Mental Health.

The by-laws also provided for an appeals process for physicians if adverse recommendations arose during the reappointment process. In relevant part, the by-laws stated that any physician who received notice of a recommendation of the credentials committee that, if ratified by a decision of the clinical director, would adversely affect his appointment to or status as a member of the medical staff, the physician would be entitled to a hearing before an ad hoc committee appointed by the president of the medical staff. If the recommendation of the ad hoc committee was still adverse to the affected physician, the physician would then be entitled to a review by the clinical director before a final decision on the matter was made. If the clinical director's review resulted in an adverse decision, and that decision was not based on a prior adverse recommendation by the credentials committee, then the physician could have a hearing and review by a committee formed by the clinical director. If the decision resulting from this review was still adverse to the physician, the physician would

have the right to request a hearing before the State Board of Mental Health.

During Dr. Scanlon's ten-year employment with the hospital, from August 1982 to August 1992, he applied for and was granted reappointment to the medical staff every two years through the procedures provided in the by-laws. In July 1992, Dr. Scanlon routinely applied for reappointment. The credentials committee, in accordance with the process for reappointment in existence since Dr. Scanlon was first employed with the hospital, reviewed Dr. Scanlon's application and recommended that he continue on the hospital medical staff. This recommendation was relayed to and adopted by the executive committee of the hospital. The clinical director then made the decision to reappoint Dr. Scanlon and continue his employment.[2]

On July 17, 1992, Dr. Scanlon received a letter from the director of the hospital stating that he was relieved of all clinical duties and suspended with pay, effective immediately, pending a meeting of the State Board of Mental Health on August 20, 1992. On August 20, Dr. Scanlon received another letter from the director stating that the Board voted not to reappoint him to the medical staff and not to extend his employment. Dr. Scanlon was never given a hearing or an opportunity for a hearing before either the credentials committee, the medical staff, the clinical director or the State Board of Mental Health, and his request that he be advised of the charges against him was refused by the defendants.

According to Dr. Scanlon, those responsible for determining whether or not to reappoint physicians to the medical staff treated his, as well as other applications for reappointment, "in such a way as to give all physicians a legitimate expectancy of continuation of employment and position on the medical staff." He further claims that the by-laws and the way in which they were applied also gave staff physicians a legitimate expectation of continued employment. This expectation of continued employment, Dr. Scanlon maintains, constitutes a protected property interest under the Fourteenth

---

**2.** Dr. Scanlon points out that the by-laws specifically state that the clinical director "decides appointments and reappointments of physicians to the medical staff."

Amendment, the alleged deprivation of which without procedural due process forms the basis of Dr. Scanlon's § 1983 claim before this court.[3]

## ANALYSIS

■■■ To prevail against the defendants in this action, Dr. Scanlon must first show that he had a property interest in continued employment—i.e., reappointment to the medical staff of the State Hospital.[4] The United States Supreme Court has stated that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972). In determining whether a person has a legitimate claim of entitlement to a benefit, the court must look to "existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." *Id.* "Such an entitlement may be expressed in a contract (specifying employment for a certain term absent just cause for dismissal), ... or in a statute (for example, tenure statutes guaranteeing contract renewal absent just cause for dismissal)...." *Henderson v. Sotelo*, 761 F.2d 1093, 1095–96 (5th Cir.1985) (citations omitted). However, although lack of a formal contractual or statutory guarantee of continued employment is relevant, it is not dispositive of a claim of property interest in continued employment. *Id.* at 1096 (citing *Perry v. Sindermann*, 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972)). As the Supreme Court made clear in *Sindermann*, a public employee may rely upon " 'the existence of rules and understandings, promulgated and fostered by state officials, that may justify his legitimate claim of entitlement to continued employment absent sufficient cause.' " *Id.* (quoting *Sindermann*, 408 U.S. at 602–03, 92 S.Ct. at 2700–2701). In other words, an employee may establish a protected property interest in employment not only by showing that there exists an express right to continued employment, but also by demonstrating an implied right. *See id.; White v. Mississippi State Oil & Gas Bd.*, 650 F.2d 540, 541 (5th Cir.1981); *McElwee v. Todd*, 581 F.2d 1182, 1183 (5th Cir. 1978).

■■■ Of course, "[t]he sufficiency of the claim to a property interest in employment

---

**3.** In his complaint, Dr. Scanlon also contends that the by-laws adopted by the hospital constituted an implied contract between him and the defendants. According to Dr. Scanlon, that implied contract obligated the defendants to give him the right to a hearing before he could be denied reappointment to the medical staff. He therefore claims that the actions of the Board of Mental Health in denying his reappointment without an opportunity for a hearing resulted in a breach of contract for which the defendants are liable under state law. Because the court concludes that plaintiff's federal claim must be dismissed for failure to state a claim upon which relief can be granted, the court further concludes that since plaintiff's state law claim is the only remaining claim in this federal court action, it should be dismissed as well. *See* 28 U.S.C. § 1367(c)(3).

**4.** As indicated, the Mississippi Department of Mental Health and the State Board of Mental Health have moved for dismissal on the ground that the Eleventh Amendment bars § 1983 claims against such state agencies in federal court. In *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989), the United States Supreme Court determined that states and state agencies are not persons subject to suit under § 1983. Clearly, *Will* requires that these defendants be dismissed from the present action. *Will* does not require, however, that the individual Board members in their official capacities be dismissed since "a State official in his or her official capacity, when sued for injunctive relief, would be a person under § 1983 because 'official-capacity actions for prospective relief are not treated as actions against the State.' " *Id.* 491 U.S. at 71 n. 10, 109 S.Ct. at 2311 n. 10 (quoting *Kentucky v. Graham*, 473 U.S. 159, 167 n. 14, 105 S.Ct. 3099, 3106 n. 14, 87 L.Ed.2d 114 (1985)). In other words, the effect of *Will* is that states, state agencies and state officials in their official capacities may not be sued under § 1983 for damages or other retrospective relief, but state officials in their official capacities may be sued for prospective relief even though states and state agencies are not likewise subject to such liability. Simply stated, although *Will* does preclude the present action against the Department of Mental Health and the State Board of Mental Health, it does not preclude Dr. Scanlon's claim for injunctive relief against the individual Board members in their official capacities.

whether created by statute, contract, or implied contract must be decided by reference to state law." *Henderson*, 761 F.2d at 1096 (citing *Bishop v. Wood*, 426 U.S. 341, 344, 96 S.Ct. 2074, 2077, 48 L.Ed.2d 684 (1976)). In this case, Dr. Scanlon does not contend that he has an express contractual or statutory right to continued employment with the hospital.[5] Rather, as discussed previously, Dr. Scanlon attempts to establish a protected property interest in continued employment by relying upon an alleged implied understanding which he claims resulted from the defendants' policy and practice of administering the hospital's by-laws as they pertained to medical staff reappointment. However, as the Fifth Circuit has held in a similar context, "an informal understanding may lead to a property interest [only] in the absence of an officially promulgated position, one way or the other, on the issue of [entitlement to continued employment]." *Batterton v. Texas General Land Office*, 783 F.2d 1220, 1223 (5th Cir.), *cert. denied*, 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986). In addressing the precise issue presented in *Batterton*, the court reasoned as follows:

> [W]e have interpreted [the statute at issue in this case] as establishing a clear and official stand [of at-will employment]; having done so, we conclude that informal understandings and customs to the contrary, and subsequent, to the enactment of the statute cannot be the source of an employee's property interest. We reiterate the language of *Roth* that understandings and customs "stem from ... state law." To say that customs entirely contrary to a statute's meaning may stem from that statute would defy reason; only if consistent with official law may such practices create a property interest in one's job.

*Id.* at 1223–24.[6] Here, as in *Batterton*, the court finds that there is an officially promulgated position which controls the court's analysis of plaintiff's due process claim.

The State of Mississippi has a comprehensive statutory scheme created to govern the employment of all state employees. *See* Miss.Code Ann. §§ 25–9–101 *et seq.* (1972); *Mississippi Forestry Comm'n v. Piazza*, 513 So.2d 1242, 1248 (Miss.1987) ("The only rights which [a State employee] could have under his employment with the State, if any, are contained within the act creating the State Personnel Board...."). This statutory scheme, entitled the "Statewide Personnel System," contains provisions which unquestionably create cognizable property interests in continued employment for those employees defined under the Act as "State service" employees, since such employees may not "be dismissed ... except for inefficiency or other good cause." Miss.Code Ann. § 24–9–127 (1972). Indeed, as the Fifth Circuit has emphasized, " '[t]he hallmark of property ... is an individual entitlement grounded in state law, which cannot be removed except "for cause." ' " *Burris v. Willis Indep. School Dist.*, 713 F.2d 1087, 1090 (5th Cir.1983) (quoting *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430–32, 102 S.Ct. 1148, 1155, 71 L.Ed.2d 265 (1982)).[7] Accordingly, for those "State service" employees defined as such by statute, the due process clause requires that they be given some type of notice and an opportunity to be heard prior to dismissal by the State.

Pertinent to the case before the court, however, is the fact that the State of Mississippi has chosen to explicitly exclude physicians and other professional employees from inclusion within the State Personnel System and its "good cause" limitation on the termi-

---

**5.** At the time Dr. Scanlon was denied reappointment to the medical staff, his previous two-year contract extension had expired and he no longer had a binding and enforceable contract of employment with the hospital.

**6.** *See also Staheli v. University of Mississippi*, 854 F.2d 121, 125 (5th Cir.1988) ("[W]hen the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules."); *Conley v. Board*

*of Trustees*, 707 F.2d 175, 179–81 (5th Cir.1983) (same); *McMillian v. Hazlehurst*, 620 F.2d 484 (5th Cir.1980) (same).

**7.** *See also Evans v. Dallas*, 861 F.2d 846, 850 (5th Cir.1988) (because employee could be terminated without cause at any time, he had nothing more than "a unilateral expectation of continued employment," which is "insufficient to create a property interest").

nation of employment. *See* Miss.Code Ann. § 25–9–107(c). As a physician employed by the State Hospital at Whitfield, Dr. Scanlon was a "Nonstate service" employee:

"Nonstate service" shall mean the following officers and employees excluded from the state service by this chapter. The following are excluded from the state service:

.    .    .    .    .

(xiii) Physicians, dentists, veterinarians and attorneys, while serving in their professional capacities in authorized employment positions who are required by statute to be licensed, registered or otherwise certified as such, provided that the State Personnel Director shall verify that the statutory qualifications are met prior to issuance of a payroll warrant by the auditor.

Miss.Code Ann. § 25–9–107(c)(xiii).

Because Dr. Scanlon was employed by the State in a job classification which is specifically excluded by statute from the "good cause" requirements of the State Personnel System, the court is of the opinion that he may not rely upon the hospital by-laws as a substantive "for cause" limitation on continued employment to establish a property interest in his position with the hospital. The court in *Ishee v. Moss*, 668 F.Supp. 554 (N.D.Miss.1987), reached a similar conclusion. In *Ishee*, the plaintiff, a head district forester, claimed that he had an implied property interest and contract by virtue of various regulations and policies of the Mississippi Forestry Commission. The district court, in addressing plaintiff's due process claim, held that his position had been expressly excluded from those defined as "State service" positions under Mississippi's Statewide Personnel System, and, as such, he had no property interest in continued employment with the State. Specifically, the court stated:

This court has previously found in this cause that [plaintiff] was covered by Miss. Code Ann. § 25–9–107(c)(xv) (Supp.1983) as it existed on the date of his firing. On that date, the statute provided that "administrative officers who report directly to the department, agency institution, board of commissioner administrative head" were

excluded from the "for cause" standard of state's system of personnel administration. Plaintiff's status is therefore explicitly addressed by the legislature and is not subject to implication of a "for cause" standard. As plaintiff is an employee at-will, he possesses no property interest in his employment and cannot maintain this action on that ground.

*Id.* at 557–58.

As did the court in *Ishee*, this court perceives Miss.Code Ann. § 25–9–107(c) as an unambiguous, official pronouncement by the State in regard to "Nonstate service" employees—i.e., that they are not subject to a "for cause" standard. This court therefore concludes that once Dr. Scanlon's two-year contract had expired, he had no cognizable property interest in continued employment with the hospital.

It is important to note in this case that the basis of Dr. Scanlon's due process claim is not that he was discharged during the term of his employment contract with the hospital, but rather, that the hospital failed to reemploy him for an additional two-year term after his previous contract had expired. The Fifth Circuit held in *Burris, supra,* and *Wells v. Hico Independent School Dist.*, 736 F.2d 243, 255 (5th Cir.1984), *cert. dismissed,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985), that an employee of a Texas school district under a term contract, as Dr. Scanlon was, had no property interest in employment beyond the term of the contract. Decisions of the Mississippi courts appear fully consistent with this result. *See, e.g., Mississippi Employment Sec. Comm'n v. Philadelphia Separate School Dist.*, 437 So.2d 388, 397 (Miss.1983) ("In non-reemployment proceedings, as distinguished from discharge proceedings, there is no requirement ... that the school administration establish good cause in order to sustain a decision not to reemploy.... [T]he school administration may refuse to rehire a teacher for good reason, for bad reason, or for no reason at all.") (citations omitted). Under Mississippi law, there is nothing to indicate that the defendants in this case could not refuse to rehire Dr. Scanlon as a staff physician with a

State hospital "for good reason, for bad reason, or for no reason at all." *Id.*

Furthermore, it is well established that the mere existence of procedures, as provided in the hospital's by-laws, does not in and of itself create a property right subject to federal due process requirements. Of course, " '[a] State may choose to require procedures for reasons other than protection against deprivation of substantive rights, ... but in making that choice the State does not create an independent substantive right.' " *Henderson,* 761 F.2d at 1097. *See also English v. Hairston,* 888 F.2d 1069 (5th Cir. 1989) (holding that statutory procedural safeguards regarding the renewal of public employment did not create a property interest in employment beyond the term of the employee's contract). Absent an entitlement created by some state or local law, the fact that employees are usually rehired and continued in employment does not, "in and of itself, ... establish a legitimate claim to continued employment." *McElwee,* 581 F.2d at 1184. As this court has previously found, there simply is no such entitlement granted Dr. Scanlon under Mississippi law.

■ Based on the foregoing, it is ordered that all claims asserted by plaintiff in this action are hereby dismissed as to all named defendants.[8] A separate judgment will be entered in accordance with Rule 58 of the Federal Rules of Civil Procedure.

---

8. As noted at the outset, Dr. Scanlon's complaint attempts to state a claim against the defendants for deprivation of liberty without due process. Specifically, his complaint alleges that the events surrounding defendants' refusal to rehire him have harmed his reputation and standing in the medical community and will harm his ability to practice medicine elsewhere. In *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976), the United States Supreme Court held that reputation alone is not a protected liberty interest, but rather, a plaintiff must show a stigma plus an infringement of some other interest. *Id.* at 707–12, 96 S.Ct. at 1163–66. In addition,

"the 'plaintiff [must] prove that stigma was caused by a false communication.' " *Connelly v. Comptroller of Currency,* 876 F.2d 1209, 1215 (5th Cir.1989) (quoting *Phillips v. Vandygriff,* 711 F.2d 1217, 1222 (5th Cir.1983)). The unsupported assertions made by Dr. Scanlon in attempting to state an unconstitutional deprivation of a protected liberty interest do not meet these standards. Dr. Scanlon's brief in response to defendants' motion did not even address defendants' arguments in this regard. As the court finds plaintiff's allegations insufficient to invoke a constitutionally protected liberty interest, this claim must be dismissed.