Annetta **STROTHER**

v.

**COLUMBIA–BRAZORIA IN- DEPENDENT SCHOOL DISTRICT, et al.**

**Civ. A. No. G–92–316.**

United States District Court, S.D. Texas, Galveston Division.

Dec. 15, 1993.

---

Laurence W. Watts, Stephen P. Glover, Watts & Glover, Houston, TX, for plaintiff.

J. Timothy Brightman, Bracewell & Patterson, Houston, TX, for defendants.

### ORDER OF DISMISSAL

KENT, District Judge.

Before the Court is Defendants' supplemental motion for summary judgment. For the reasons stated below, Defendants' motion is GRANTED.

This 42 U.S.C. § 1983 action arises out of the termination of Plaintiff Annetta Strother in the fall of 1990 as a cafeteria manager for Defendant Columbia–Brazoria Independent School District. Plaintiff claims that the actions of Defendants in this termination violated her due process rights under the Fourteenth Amendment.

When asserting a due process violation, a plaintiff must first establish a property interest in her job.

> [Property interests] are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.

*Batterton v. Texas Gen. Land Office,* 783 F.2d 1220, 1222 (5th Cir.1986), *cert. denied,* 479 U.S. 914, 107 S.Ct. 316, 93 L.Ed.2d 289 (1986) (alteration in the original) (quoting *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972)).

■ These property rights can be created by state statute, local ordinance or rule, written contract, or mutually explicit understanding enforceable under state law as an implied contract. *Johnson v. Southwest Miss. Regional Med. Ctr.,* 878 F.2d 856, 858 (5th Cir.1989); *Irby v. Sullivan,* 737 F.2d 1418, 1421 (5th Cir.1984). The property interest arises when the statute, rule, contract, or understanding limits an entity's power to terminate a plaintiff only for just cause. *Henderson v. Sotelo,* 761 F.2d 1093, 1095–96 (5th Cir.1985).

Neither party asserts that a state statute or written contract granted Plaintiff a property interest in her job. The parties assert conflicting standards this Court should use in examining whether Plaintiff's alleged property interest arose from mutually explicit understandings or an implied contract. The Court finds that both parties are in error.

■ Plaintiff relies on *Stapp v. Avoyelles Parish Sch. Bd.,* 545 F.2d 527, 534 (5th Cir. 1977), in urging that she need not show that an enforceable contract existed, only that a non-subjective expectancy was created that she could only be fired for just cause. Although the Court can appreciate this interpretation of *Stapp,* it conflicts with the Supreme Court's decision in *Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972), and later Fifth Circuit decisions.

The Supreme Court held in *Perry* that although a plaintiff is not required to show a *written* contractual provision to support her property interest, she must at least show that an implied contract existed under state law. *Perry,* 408 U.S. at 601–02, 92 S.Ct. at 2699–2700. Additionally, in *Raju v. Rhodes,* 809 F.Supp. 1229, 1237 (S.D.Miss.1992), *aff'd,* 7 F.3d 1210 (5th Cir.1993), the district court stated that "a plaintiff must show an enforceable contractual right, whether explicit or implicit, establishing a legitimate claim of entitlement to continued employment under state law." *Raju,* 809 F.Supp. at 1241. The Fifth Circuit recently affirmed the district court's determination that the plaintiff had no protectable property interest in his employment. *See Raju v. Rhodes,* 7 F.3d at 1215 (5th Cir.1993).

Moreover, the Fifth Circuit has stated that "[w]hile an implied contract can be the source of a protected property interest in employment, it cannot do so in the absence of 'mutually explicit understandings' that support [the employee's] claim of entitlement.'" *White v. Mississippi State Oil and Gas Bd.,* 650 F.2d 540, 543 (5th Cir.1981) (second alteration in the original) (quoting *Perry,* 408 U.S. at 601, 92 S.Ct. at 2699). After a review of a substantial amount of the pertinent case law, the Court concludes that Plaintiff's contentions are in error. *See also Johnson,* 878

F.2d at 858; *Irby v. Sullivan*, 737 F.2d at 1421.

■ At the other end of the spectrum, Defendants argue that school districts in Texas cannot impliedly contract with their employees regarding employment terms. As authority, Defendants cite *Burris v. Willis Independent School District*, 713 F.2d 1087, 1090–91 (5th Cir.1983). The *Burris* holding was based upon the pronouncements of Tex. Educ.Code Ann. § 28.23 (Vernon 1972) which only applies to teachers and school executive officers. *See Burris*, 713 F.2d at 1090. Plaintiff falls in neither of these categories. Thus, the strictures of *Burris* do not apply here.

■ After reviewing the case law, the Court concludes that to establish a property right, Plaintiff must show, at the least, an implied contract as defined by Texas law based upon mutually explicit understandings.

In the instant case, the only evidence identified by the parties regarding Plaintiff's possible property rights are (1) a written policy of the School District regarding employees like Plaintiff, (2) oral representations made to Plaintiff by her previous direct supervisor, Eleanor Stuckey, (3) previous written employment contracts (Plaintiff had no written employment contract for the school year in which she was fired), (4) an unwritten-but-understood grievance procedure of the School District for employees like Plaintiff who were terminated, and (5) a letter of reasonable assurance of employment.

In 1987, about three years before Plaintiff was terminated, the School District adopted a written policy which contained two provisions that affect Plaintiff's claim of a property interest. The first provision specifically stated that employees in Plaintiff's position "shall serve at will, are not employed for any specified length of time, and have no property right in their employment." The second provision stated, "No employee other than the Superintendent has any authority to make oral representations or agreements for employment … or to make any other agreement or representation regarding employment."

Plaintiff's primary contention is that Stuckey's representations to Plaintiff that Stuckey would fire employees in Plaintiff's position only for cause constituted mutually explicit understandings which gave rise to Plaintiff's property interest. Plaintiff's evidence shows that Stuckey believed that her assertions were a policy of the School District although she was not aware of the established, contrary, written policy.

Plaintiff also contends that Stuckey had the authority to make oral representations regarding employment terms.[1] But, Plaintiff never contends that the superintendent explicitly gave Stuckey the authority to alter the written policy of the District. Plaintiff only contends that the superintendent gave her the power to hire and fire, which she admits had to conform to the District's policy. In her response to the summary judgment motion, Plaintiff states that the assistant superintendent "admitted that the Superintendent had the authority to delegate decision making authority to other administrators regarding employment terms." But, the Court finds that the evidence cited by Plaintiff as proof of this assertion does not support Plaintiff's contention at all.[2]

Plaintiff also produces evidence that one of the District's assistant superintendents believed that Stuckey "never exceeded her authority." But, this assistant was never specifically asked if Stuckey exceeded her authority when she purported to give Plaintiff property rights in her job, contrary to written policy.

In *Staheli v. University of Mississippi*, 854 F.2d 121, 125 (5th Cir.1988), the plaintiff was a professor at a university that had a formal tenure policy. The policy outlined several broad requirements that a professor must fulfill to become tenured, one of which

---

**1.** The chain of command at the School District was the superintendent, assistant superintendent, Stuckey, and then Plaintiff.

**2.** At first glance, most of Plaintiff's arguments regarding the existence of a property interest are persuasive. But after reviewing the evidence cited by Plaintiff in support of these arguments, the Court finds many of Plaintiff's inferences extremely tenuous.

was publishing papers in prestigious journals. The plaintiff's previous direct supervisor had assured him over the previous four years that he was making satisfactory progress towards tenure and instructed the plaintiff to focus on obtaining speaking engagements, not publishing papers. The university eventually denied the plaintiff tenure, partially because he had no published papers, and he sued. The plaintiff alleged that he had a property interest in his job because he fulfilled the requirements outlined in the formal policy and because of the mutual understanding with his previous supervisor that he would be tenured.

The Fifth Circuit affirmed a summary judgment that plaintiff possessed no property interest in continued employment. The court held that the very existence of a formal tenure policy negated the possibility of "de facto" tenure. The court also stated, with reference to the representations of the plaintiff's supervisor, that the plaintiff failed to prove that the supervisor spoke for the university.

Moreover, even if the supervisor did speak for the university, the court stated, "when formal rules and informal understandings conflict, the formal rules control. In other words, when the state provides an explicit and formal policy governing entitlement to a job, informal and customary understandings cannot create a property interest in the face of the formal rules." *Staheli*, 854 F.2d at 125; *see Scanlon v. Department of Mental Health*, 828 F.Supp. 421, 425 n. 6 (S.D.Miss. 1993) (quoting *Staheli*); *Raju*, 809 F.Supp. at 1243 (quoting *Staheli*).

Informal understandings may lead to a property interest only in one of two ways: (1) if there is no officially promulgated position; *Staheli*, 854 F.2d at 125; *Scanlon*, 828 F.Supp. at 425; or (2) if they are consistent with official law. *Raju*, 809 F.Supp. at 1242. Thus, even if Stuckey spoke on behalf of the School, which the Court concludes that she did not, Stuckey's representations to Plaintiff could not have created an enforceable contractual right which would give rise to a property interest under the Fourteenth Amendment.

Plaintiff cites her previous employment contracts as evidence that she possessed a property interest in her job. Plaintiff did not have a written employment contract with the School District the year she was fired. Her previous two yearly employment contracts specifically stated that she was an at-will employee—the most recent contract even referred Plaintiff to the above-mentioned written policy of the District. The employment contracts before these stated that she could only be fired for good cause.

In contrast to these facts, Plaintiff states that for at least the last three years of her employment, Stuckey represented to her that she could only be fired for cause. These representations were made in the face of the last two written contracts which specifically stated that she was an at-will employee; contracts that were signed by the superintendent and by Plaintiff and one of which specifically referring Plaintiff to the written policy of the District. Surely, Stuckey's oral representations, which directly contradicted the terms of written contracts signed by the superintendent and the written policy of the District, could not have created any rational expectation of continued employment in Plaintiff.

Plaintiff emphasizes in her arguments that Stuckey had the authority to make these representations of continued employment to Plaintiff and others. The formal written policy of the School District vested oral representation or modification of employment terms in the superintendent, who thus, could have been the only person to delegate such authority to Stuckey. Plaintiff presents no evidence that the superintendent actually granted the authority to orally modify employment terms to Stuckey. Moreover, it is illogical to infer that the superintendent delegated such oral authority to Stuckey on one hand while signing contradictory, written contracts on the other.

After reviewing the evidence, the Court concludes that the representations of Stuckey were beyond her authority, contrary to formal written policy, and did not constitute mutually explicit understandings between Plaintiff and the School District which would give rise to a property interest.

■ Plaintiff also asserts that a property interest is suggested because the School District had an established grievance procedure for terminated employees. Plaintiff's assertion, in conjunction with the other evidence in this case, is contrary to Supreme Court and Fifth Circuit authority. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 105 S.Ct. 1487, 1493, 84 L.Ed.2d 494 (1985); *English v. Hairston,* 888 F.2d 1069, 1070 (5th Cir.1989); *Henderson,* 761 F.2d at 1097; *see also Wells v. Hico Indep. Sch. Dist.,* 736 F.2d 243, 253 n. 13, 254 (5th Cir. 1984), *cert. dism'd,* 473 U.S. 901, 106 S.Ct. 11, 87 L.Ed.2d 672 (1985). In Texas this is especially true since "any modification of the general at-will rule must be clear and explicit." *Christian v. McKaskle,* 649 F.Supp. 1475, 1479 (S.D.Tex.1986); *see Wells,* 736 F.2d at 251–55; *Renken v. Harris County,* 808 S.W.2d 222, 225 (Tex.App.—Houston [14th Dist.] 1991, no writ). "As the United States Supreme Court has stated, '[t]he State may choose to require procedures for reasons other than protection against deprivation of substantive rights, of course, but in making that choice the State does not create an independent substantive right.'" *Henderson,* 761 F.2d at 1097 (quoting *Olim v. Wakinekona,* 461 U.S. 238, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983)); *Scanlon,* 828 F.Supp. at 427 (substantially quoting the same language).

■ The Court finds that the letter of reasonable assurance of employment signed by Plaintiff did not create a property interest in Plaintiff's job. It is clear that this letter was required under Texas unemployment laws which were not intended to change the general at-will status of those to whom it applies. Moreover, the Court finds that the letter did not constitute a contract for employment which would create a property interest in Plaintiff's job.

■ Finally, there is another legal basis which negates the existence of Plaintiff's property interest in continued employment. The school year in which Plaintiff was fired was the first year she did not have a written employment contract. Moreover, Plaintiff does not identify the existence of an oral contract that identified a certain length of employment. Thus, Plaintiff's employment was for an indefinite period, and she could be terminated at will and without cause. *Sabine Pilot Serv., Inc. v. Hauck,* 687 S.W.2d 733, 734 (Tex.1985).

As in *Staheli,*

> Whatever actual expectations [Plaintiff] may have had, they cannot be constitutionally baptized a "legitimate claim of entitlement" to permanent employment. This is not a state-law suit claiming detrimental reliance and seeking damages based on misleading statements by [Plaintiff's former supervisor], with the [School District] joined under respondeat superior; such a case might be well-founded. This is a constitutional action asserting a property interest in a non-tenured [non-]teaching job; and it is not [well-founded].

*Staheli,* 854 F.2d at 126.

■ Plaintiff has also asserted the deprivation of liberty when she was terminated because she was accused of purloining several items from the cafeteria. "The remedy for a deprivation of liberty is a name-clearing hearing...." *Wells,* 736 F.2d at 256 n. 18 (quoting *White v. Thomas,* 660 F.2d 680, 685 (5th Cir.1981), *cert. denied,* 455 U.S. 1027, 102 S.Ct. 1731, 72 L.Ed.2d 148 (1982). It is clear from the evidence presented by the parties that Plaintiff was given a name-clearing hearing before she was terminated in which she could have refuted the charges against her. Moreover, Plaintiff was given more than one opportunity after her discharge to present her side of the story.[3] Since the District fulfilled their constitutional obligation of a name-clearing hearing to Plaintiff, Defendants are entitled to a summary judgment against Plaintiff on her deprivation-of-liberty claim.

---

**3.** In its April 30, 1993, Order, the Court ordered the parties to more fully brief the issue of whether Plaintiff was given proper procedural due process regarding her alleged property and *liberty* interest. But, the parties only specifically briefed the issue of procedural due process of Plaintiff's property claim. The Court concludes that the evidence presented on this issue is sufficient to show whether Plaintiff was afforded the proper procedural due process on her alleged liberty claim.

■ As an aside, the Court comments that while it feels genuine empathy for Plaintiff's plight, it simply cannot act as a de facto social-service entity, unilaterally second guessing the administrative decisions of school districts or any other state institutions. The purpose of federal statutes like 42 U.S.C. § 1983 is to allow redress for *constitutional* violations, not mere terminations, however unfair or unfounded. Many individuals who have been terminated, for whatever reason, claim that their termination violated their constitutional rights and request this Court and others to hear their side of the story. But, while such requests are fraught with pathos, they simply cannot justify further action not permitted by the Constitution.

Although the Court appreciates that the presentation of a plaintiff's side of a case to a jury or even to the Court has a certain therapeutic value, is this value worth congesting the dockets of district courts everywhere and wasting enormous amounts of taxpayer money, both federal, for entertaining the lawsuit, and state, for defending against it? In this regrettable case, the Court feels not.

It is not the Court's wish to discourage individuals whose constitutional rights have been violated by the state from requesting the appropriate relief from this Court, but it is the Court's desire to make individuals, and their attorneys, pause to consider whether it was their constitutional rights that were violated, or merely their pride or economic interests that were injured.

For the reasons stated above, Defendants' supplemental motion for summary judgment is GRANTED and all Defendants are DISMISSED WITH PREJUDICE. The parties shall each and all bear their own costs incurred herein to date. The parties are ORDERED to file no further pleadings or motions with this Court, particularly including motions to reconsider or the like. Any further relief shall be sought, as appropriate, from the United States Court of Appeals for the Fifth Circuit.

IT IS SO ORDERED.

## FINAL JUDGMENT

For the reasons set forth in the Court's Order granting Defendants Columbia–Brazoria Independent School District's, Dr. Phillip Mitchell's, Barbara Searcy's, and Phu Master's motion for summary judgment, the Court DISMISSES all Defendants from this case WITH PREJUDICE.

As to Defendants Columbia–Brazoria Independent School District, Dr. Phillip Mitchell, Barbara Searcy, and Phu Master, THIS IS A FINAL JUDGMENT.