**Artie C. CHRISTIAN, Jr., Plaintiff,**

v.

**CITY OF DALLAS, Bennie Click, Individually and in His Official Capacity, Defendants.**

**No. 3:98CV2174R.**

United States District Court, N.D. Texas, Dallas Division.

Sept. 22, 1999.

Artie C. Christian, Jr., Arlington, TX, pro se.

Myrlintha P. Benford, Dallas City Attorney's Office, Dallas, TX, for City of Dallas.

## MEMORANDUM OPINION AND ORDER

BUCHMEYER, Chief Judge.

Before the Court is Defendants' Motion for Summary Judgment. Plaintiff Artie C. Christian Jr. ("Christian"), proceeding *pro se*, filed this suit against the City of Dallas and Chief Bennie Click, individually and in his official capacity, alleging that his termination from the Dallas Police Department constituted: (1) a violation of his federal constitutional and statutory rights under 42 U.S.C. § 1981; (2) a denial of due process in violation of 42 U.S.C. § 1983; and (3) wrongful termination. Plaintiff has failed to respond to Defendants' present motion. For the reasons stated below, Defendants' Motion for Summary Judgment is **GRANTED**.

## I. BACKGROUND FACTS [1]

On February 11, 1991, Christian, an African American male, began employment with the Dallas Police Department as a police officer trainee, and shortly afterwards was promoted to police officer. After several months with the Dallas Police Department, Christian starts having disciplinary problems. As a result of these problems, Christian was suspended, counseled, reprimand and finally terminated. The suspensions began in September 30, 1991, when Christian was suspended for five days for submitting a false report to his supervisor. He then received a one day suspension on April 29, 1994, for being late for daily roll call on January 30, 1994, a ten day suspension without pay on Janu-

ary 12, 1996, for failing to report for duty, and a one day suspension on September 10, 1996, for failing to prepare the proper offense report by the end of his tour of duty.

During the period in which he received his suspensions, Christian also received a documented counseling on December 26, 1993, for being tardy in excess of three times without proper approval, as well as a documented verbal counseling on February 9, 1995, for being late for detail on three occasions and for being late a total of fifteen days from December 26, 1993, through December 31, 1994. Additionally, on May 9, 1994, Christian received a letter of reprimand from the Internal Affairs Division ("IAD") for being late for his daily roll call on February 28, 1994, his seventh tardy in four months.

Several years later, Christian was subject to four IAD investigations, which ultimately led to his termination. The first IAD investigation started on October 10, 1996, and inquired into allegations that on October 8, 1996, Christian (1) left his duty assignment without proper authorization; (2) failed to remain observant and occupied with police business during his tour of duty; (3) changed his location without updating his status with the dispatcher; (4) failed to investigate an incident that came to his attention to the fullest extent within his assigned responsibility; and (5) answered a call for service by using the cellular telephone. Christian was notified of these allegations and given an opportunity to respond. On December 12, 1996, he responded to these allegations by submitting a statement to IAD. At the conclusion of the investigation, Christian was able to review it and was given the opportunity to respond, which he did on January 28, 1997. After IAD investigated the allegations, spoke to witnesses, and obtained written statements, IAD sustained the allegations and recommended to Chief Ben-

---

1. The following facts are taken from Defendant's Motion for Summary Judgment and
Plaintiff's Original Complaint.

nie Click that Christian should be held accountable for violating various sections of the Dallas Police Department Code of Conduct, the Dallas Police Department General Orders, and the Dallas Police Department Office of Field Operations Operating Procedures for Police Officers. *See* Def. Mot. for S.J.pgs. 6–8.

On December 23, 1996, the IAD began its second investigation into Christian's performance. The allegation was that between November 1, 1996 and December 31, 1996, Christian took improper credit for activity on his daily activity report. Again, as in the previous investigation, Christian was notified and provided an opportunity to respond. He responded on February 14, 1997. At the conclusion of the investigation, Christian reviewed it and was given the opportunity to respond. On March 31, 1997 he submitted a response to the findings of the investigation. After examination of all evidence in front of it, the IAD sustained the allegations and recommended to Chief Click that Christian should be held accountable for violating various sections of the Dallas Police Department Code of Conduct and the City of Dallas Personnel Rules. *See* Def. Mot. for S.J. pgs. 8–9.

On April 7, 1997, IAD conducted a third investigation. The allegations were that (1) on March 16, 1997, Christian engaged in conduct that has a tendency to adversely affect, lower or destroy public respect and confidence in the Department or officer, when he was involved in a "Contest of Speed" in his personal vehicle, and (2) on April 20, 1997, he was untruthful in his Internal Statement when he stated he did not drive his car on March 16, 1997, that he was not stopped by the Dallas Police that day, and that he was not involved in a Contest of Speed on March 16, 1997. As in the two previous investigations, Christian was notified of these allegations and provided an opportunity to respond, which

he did. After reviewing all evidence available, IAD recommended that Christian should be accountable for the violation of the Dallas Police Department Code of Conduct. *See* Def. Mot. for S.J. pgs. 9–10.

The final IAD investigation commenced on April 14, 1997 into the allegation that on April 5 and 6, 1997, Christian had submitted a falsified medical form to excuse himself from work. As before, he was given the opportunity to respond, which he did on April 23, 1999. At the conclusion of the investigation, he reviewed and responded to the findings. Afterwards, IAD sustained the allegations and recommended to Chief Click the Christian should be held accountable for violations of the Dallas Police Department Code of Conduct. *See* Def. Mot. for S.J. pgs. 9–10.

After receiving the recommendations from IAD's four investigations, Chief Click held a disciplinary hearing with Christian on May 27, 1997. During this hearing, Christian was told the reason for the hearing and the allegations of the four investigations that were sustained by the IAD. Before Chief Click decided on his discipline, Christian was allowed to respond to the investigations. At this meeting, they also discussed Christian's past disciplinary history, and, at this time, Christian was told he was being terminated from his employment with the Dallas Police Department. *See* Def. Mot. for S.J. pgs. 12. Chief Click's findings were memorialized in a letter dated this same day. *Affidavit of Bennie Click* pgs. 2–5.

After his termination, Christian appealed his discharge to an Assistant City Manager in accordance with Dallas Personnel Rule 34–38(f)(4)(A). A hearing on his discharge was heard on July 14, 1997, in front of Manager Ryan Evans. At this time, Christian had the opportunity to present evidence as to why he should not be terminated.[2] In a letter dated July 14, 1997,

---

**2.** Dallas Personnel Rule 34–38(f)(4)(b) provides that an appeal of a disciplinary actions before the assistant city manager, the assistant city manager may either affirm the action of the department director, set aside the ac-

tion of the department director, or direct the department director to enter a new order that the assistant city manager determines is just and equitable.

Manager Evans stated to Christian that after reviewing all of the evidence presented and hearing his testimony, he was upholding Christian's termination from the Dallas Police Department.

After this decision, Christian appealed his discharge to a Trial Board.[3] On August 8, 1997, the Civil Service Board Secretary, David Truly, notified Christian that the Trial Board would hear his appeal on September 3, 1997, and that Dallas Personnel Rules § 34–40 would govern the hearing process. Dallas Personnel Rule § 34–40(m)(1) provides:

> . . . [t]he hearing shall be conducted in two phases. During the first phase, the Trial Board hears evidence to determine whether the employee committed the violation that resulted in the employee's discharge. If the Trial Board, by a majority vote, finds that the employee committed any part of the violation alleged, the hearing proceeds to the second phase. If the Trial Board finds that the employee committed no part of the alleged violation the employee shall be reinstated without penalty and the proceedings closed.

*See* Dallas Personnel Rule § 34–40 *reprinted* in Def.App. in Support of S. J.

In phase one of the appeal, the City presented evidence as to why Christian did or did not commit the violations for which he was discharged from employment. Christian, represented by counsel, admitted to the Trial Board the he violated Dallas Police Department Code of Conduct by leaving his duty assignment without proper authorization and by failing to remain observant and occupied with police business during his tour of duty. *See* Trial Board Transcripts pgs. 12:11–14.18, *reproduced* in Def.App. in Support of Def. Mot. for S.J. Christian also stipulated that he violated Dallas Police Department General Orders by changing his location without updating his mark out location. He also admitted to releasing a subject during a routine traffic stop who had active warrants against him without first obtaining supervisory approval. He also admitted to using a cellular phone prior to arrival at a location in violation of police rules. *See id* at pgs. 16:24–20:17.

Since Christian stipulated to some of the violations that were the basis of his termination, the hearing proceeded to phase two. Pursuant to Dallas Personnel Rule § 34–40(m)(2) which states that during phase two of the hearing the Trial Board shall hear evidence concerning the appropriateness of the discipline imposed for the violation, during this phase, Christian and the City presented evidence regarding the appropriateness of his termination.

On behalf of the Trial Board, in a letter to Chief Click dated September 16, 1997, David Truly stated that the Trial Board had voted unanimously to sustain Christian's termination. *See* September 16, 1997 Memorandum *reproduced* in Def.App. in Support of Def. Mot. for S. J.

On September 18, 1998, Christian filed a lawsuit against the City of Dallas and Bennie R. Click, individually and in his official capacity, alleging that Christian (1) was denied his rights under 42 U.S.C. § 1981, (2) was denied due process rights under the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983, and (3) was wrongfully terminated from his position with the Dallas Police Department. Now pending before the court is Defendants' Motion for Summary Judgment, filed June 7, 1999.

## II. ANALYSIS

### A. Summary Judgment Standard

Rule 56(c) of the Federal Rules of Civil Procedure allows summary judgment only when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Melton v. Teachers*

---

**3.** Dallas City Charter Ch. XVI Civil Service and Personnel § 12 provides that a discharged employee may appeal a discharge or reduction in grade to a trial board.

*Ins. & Annuity Ass'n of Am.*, 114 F.3d 557, 559 (5th Cir.1997). The court must decide all reasonable doubts and inferences in the light most favorable to the party opposing the motion. *See Lemelle v. Universal Mfg. Corp.*, 18 F.3d 1268, 1272 (5th Cir.1994); *Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir.1988). As long as there appears to be some support for the disputed allegations such that "reasonable minds could differ as to the import of the evidence," the motion must be denied. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The party moving for summary judgment bears the initial burden of identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *See Celotex*, 477 U.S. at 323, 106 S.Ct. 2548; *Lynch Properties, Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir.1998). Where the nonmoving party bears the burden of proof on a claim upon which summary judgment is sought, the moving party may discharge its summary judgment burden by showing that there is an absence of evidence to support the nonmoving party's case. *See Celotex*, 477 U.S. at 325, 106 S.Ct. 2548. Once the moving party has satisfied this burden, the nonmoving party must go beyond the pleadings and by its own affidavits or by depositions, answers to interrogatories, and admissions on file set forth specific facts showing a genuine issue for trial. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Edwards v. Your Credit, Inc.*, 148 F.3d 427, 431–32 (5th Cir.1998). Summary judgment will be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322, 106 S.Ct. 2548.

When the nonmoving party fails to respond to the motion for summary judg-

ment, as in this case, the court may not grant summary judgment on this basis alone. *See Eversley v. MBank Dallas*, 843 F.2d 172, 174 (5th Cir.1988). Instead, the court takes the moving party's evidence as undisputed and must assess whether the moving party has met its burden of entitlement to summary judgment based on the evidence. *See id; Vega v. J.C. Parsley*, 700 F.Supp. 879, 881 (W.D.Tex.1988). While this court understands the difficulties facing parties who choose to proceed *pro se*, the Court must nevertheless require that Plaintiff follow the same procedural rules that govern all litigants. *See Martin v. Harrison County Jail*, 975 F.2d 192, 193 (5th Cir.1992) (per curiam).

**B. Plaintiff 42 U.S.C. § 1981 claim should be dismissed since 42 U.S.C. § 1983 provides the plaintiff its sole remedy.**

In his complaint, Plaintiff states that he is seeking relief for violations of his federal constitutional and statutory right as protected under Title 42 U.S.C. § 1981. Section 1981(a) states: "All persons within the jurisdiction of the United States have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of the persons and property as is enjoyed by the white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981. In 1989, the Supreme Court declined to imply a cause of action under § 1981 against state actors, holding that when Congress originally enacted §§ 1981 and 1983, Congress "thought that the declarations of rights in § 1981 would be enforced against state actors only through the remedial provisions of § 1983." *Jett v. Dallas Indep. Sch. Dist.*, 491 U.S. 701, 731–736, 109 S.Ct. 2702, 105 L.Ed.2d 598(1989). Later, § 1981 was amended by Congress to add a section stating that "[t]he rights protected by this section are protected against impairment by nongov-

ernmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Nothing in this language creates an express cause of action against a state official. *See Tabor v. City of Chicago,* 10 F.Supp.2d 988, 992 (N.D.Ill.1998).

■ Based on the Supreme Court's holding § 1981 enumerates only federal rights for individuals and does not create an express cause of action against those who allegedly violate these rights, and absent clear evidence from Congress that § 1981 is a remedy available for a violation by a state actor of an individual's § 1981 rights, the Court agrees with Defendants that Christian's § 1981 claims should be dismissed.

**C. Defendants are entitled to summary judgment on Christian's claims that his due process rights were violated under 42 U.S.C. § 1983.**

Plaintiff claims that (1) Defendant Click denied him a full, fair, and impartial hearing, (2) the Trial Board denied him a full and fair hearing and (3) the Internal Affairs Division ("IAD") denied him a full and fair investigation of the allegations against him. Plaintiff alleges that these acts of the violated his due process rights under 42 U.S.C. § 1983. Because Plaintiff does not specify the nature of his due process claim the Court will analyze Christian's claims as if he had alleged both procedural and substantive due process violations.

**1. Procedural Due Process**

■ Procedural due process entitles a plaintiff who is a public employee with a property right in his employment to notice of the charges against the employee, explanations of the employer's evidence, and an opportunity to present the employee's side of the story. *See Cleveland Bd. of Educ. v. Loudermill,* 470 U.S. 532, 541, 546, 105 S.Ct. 1487, 84 L.Ed.2d 494(1985); *Spuler v. Pickar,* 958 F.2d 103, 107 (5th Cir.1992). The Supreme Court has held that the Constitution does not create property interests, but rather that such interests "are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ..." *See Loudermill,* 470 U.S. at 538, 105 S.Ct. 1487. Thus, these property rights can be created by state statute, local ordinance or rule, written contract, or mutually explicit understanding under state law as an implied contract. *See Strother v. Columbia–Brazoria Indep. Sch. Dist.,* 839 F.Supp. 459, 461 (S.D.Tex.1993), *aff'd,* 32 F.3d 565 (5th Cir.1994). The existence of any such interest as to Christian must thus be determined by Texas law. *See Garcia v. Reeves County, Tex.,* 32 F.3d 200, 203 (5th Cir.1994); *Mattix v. Hightower,* 1998 WL 246671 *4 (N.D.Tex.1998).

■ Texas is an employment-at-will state. *See Moulton v. City of Beaumont,* 991 F.2d 227, 230 (5th Cir.1993) (citations omitted). Absent any contractual limitations either party may end an employment relationship at will, with or without cause. *See Garcia,* 32 F.3d at 203. Thus, a property interest can only arise when the statute, rule, contract, or understanding limits an entity's power to terminate a plaintiff only for just cause. *See Strother,* 839 F.Supp. at 461 (citing *Henderson v. Sotelo,* 761 F.2d 1093, 1095–96 (5th Cir.1985)). In the case at hand, the Plaintiff did not have an employment contract with the Dallas Police Department. Plaintiff has failed to show that his at-will employment has been altered either by the City or the Dallas Police Department. Since Christian has produced no evidence to prove he had a constitutionally protected property right, Defendants are entitled as a matter of law to summary judgment on Plaintiff's claim of a violation of procedural due process.

■ Furthermore, even if Plaintiff had demonstrated he had a property right, summary judgment for the Defendants would still be appropriate because the Defendants provided him with the required procedural due process. There is no dispute that Christian received notice and an opportunity to present his story. Christian admits he received notice of all IAD

investigations and that he was given the opportunity to respond to each one of them. *See* Deposition of Artie C. Christian *reprinted* in Def.App. in Support of S.J. He also acknowledges that prior to his termination he had a disciplinary meeting with Chief Click in which they discussed the four IAD investigations which lead to his termination. Christian also admits that he appealed his termination to the Assistant Chief Manager and that at his appeal hearing he had the opportunity to present evidence as to why he should not have been terminated. Plaintiff also concedes that he appealed the Assistant Chief Manager's decision to the Trial Board. Finally, he also admits that during this appeal to the Trial Board he was represented by an attorney, called witnesses, and presented testimony and evidence. *Id.* at 268–269. This Court agrees with the Defendants that, prior to his discharge, Christian was given notice of the charges against him and was allowed ample opportunity to respond. Thus, Christian was granted the minimum due process required by the Fourteenth Amendment.

### 2. Substantive Due Process

 For a Plaintiff to succeed with a cause of action based on substantive due process in the public employment context, he must show (1) that he had a property interest or right in his employment, and (2) that the public employer's termination of that interest was arbitrary and capricious. *See Harrington v. Harris,* 118 F.3d 359, 368 (5th Cir.1997). In the previous section, the Court has concluded that Christian had no property interest in his employment with the Dallas Police Department. *See infra* Section C(1). On this issue alone Defendants are entitled to Summary Judgment.

 Even if Christian had shown he had a property right, summary judgment for the Defendants would still be appropriate because the Defendants did not violate his substantive due process rights. Public officials violate substantive due process when they act arbitrarily or capriciously. *See Spuler v. Pickar,* 958

F.2d 103, 107–108 (5th Cir.1992). In the case at hand, Plaintiff has provided no evidence to show that Defendants acted arbitrarily or capriciously. Christian was provided with several opportunities to respond to the allegations and present evidence. The court agrees with the Defendants that there is no material fact issue that Plaintiff's termination was not arbitrary or capricious, but was based on the results of extensive administrative investigations and his past disciplinary history.

### D. Defendants are entitled to summary judgment since there is no prima facie case of wrongful termination.

#### 1. Wrongful Termination under Texas Law

 Plaintiff alleges he was wrongfully terminated from his employment. As Texas follows the employment at will doctrine, employment for an indefinite term may generally be terminated at will and without cause. *See Schroeder v. Texas Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex.1991). Thus, to establish a cause of action for wrongful termination, an employee must demonstrate that he and his employer had an express contract that specifically limited the right to terminate the employment. *See Webber v. M.W. Kellogg Co.,* 720 S.W.2d 124, 128 (Tex.App.— Houston [14th Dist.] 1986, writ ref'd n.r.e.). While an employee's "at will" status may be modified, the modification must be express, and the burden of proving modification rests on the person asserting the modification. *See Hathaway v. General Mills, Inc.,* 711 S.W.2d 227, 228–29 (Tex.1986).

 In the case at hand, Plaintiff has offered no evidence establishing that he had anything other than an "at-will" employment contract with Defendants. Hence, summary judgment should be granted as to Plaintiff's state law wrongful termination claim.

### 2. Wrongful Termination Based on Race Discrimination

■ There are several statutory exceptions to the employment "at will" doctrine. These include (1) discharge based on filing a worker's compensation plan; (2) discharge based on membership or nonmembership in a union; (3) discharge based on active duty in state military; (4) discharge based on jury service; and (5) discharge based on discrimination. *Aiello v. United Air Lines, Inc.*, 818 F.2d 1196, 1204 n. 1 (5th Cir.1987) (citations omitted). In his complaint, Plaintiff through reference to his involvement with the African–American community, Plaintiff alleges only discharge based on race discrimination.

■ To establish a prima facie case for wrongful termination based on race discrimination, the employee must show: (1) he was a member of a protected class; (2) he was qualified for his position; (3) he was terminated despite his qualifications; and (4) the position was either held open or given to someone not a member of the protected class. *Frazier v. Garrison Indep. School Dist.*, 980 F.2d 1514, 1526 (5th Cir.1993). If the employee is successful in establishing a prima facie case for race discrimination, the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for the employee's termination. *See Randle v. Telecom, Inc.*, 1998 WL 355470 (N.D.Tex. June 26, 1998). Once a legitimate nondiscriminatory reason has been asserted, the burden shifts back to the employee to establish that the employer's proffered reasons were merely a pretext for discrimination. *See Texas Dep't of Comm. Affairs v. Burdine*, 450 U.S. 248, 252, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). The ultimate burden of persuasion rests with the employee asserting discrimination. *See id.*

■ Plaintiff has raised no facts sufficient to prove discrimination. Plaintiff arguably demonstrated that he was both African American and qualified for the job, and that he was terminated; however, Plaintiff failed to offer any evidence of being replaced by a person outside of his protected class. Moreover, even if Plaintiff was successful in making out his prima facie case for discrimination, Defendants articulated a legitimate, nondiscriminatory reason for Plaintiff's termination by stating that Plaintiff "was discharged for violations of DPD rules and regulations, combined with a history of disciplinary problems." (Def. Brief in Support of its Mot. for S.J. p. 23). Therefore, because Plaintiff failed to offer any evidence of pretext, summary judgment should be granted as to Plaintiff's wrongful termination claim based on race discrimination.

### E. Chief Bennie Click is entitled to summary judgment on the claims against him on the basis of qualified immunity.

■ Defendants also argue the Chief Bennie Click is entitled to qualified immunity from Plaintiff's claims. Government officials performing discretionary functions are shielded from civil liability when their conduct does not violate clearly established constitutional or statutory rights of which a reasonable person would have known. *See Harlow v. Fitzgerald*, 457 U.S. 800, 818, 102 S.Ct. 2727, 2738, 73 L.Ed.2d 396 (1982). The question of whether an official is entitled to qualified immunity depends on whether the plaintiff has alleged a violation of clearly established constitutional rights and whether the official's conduct was objectively reasonable under the prevailing legal standards at the time of the events in question. *See Salas v. Carpenter*, 980 F.2d 299, 305 (5th Cir.1992); *see also Siegert v. Gilley*, 500 U.S. 226, 231–32, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991). The burden is ultimately on the Plaintiff to produce evidence to overcome the defense of qualified immunity. *See United States v. Burzynski Cancer Research Inst.*, 819 F.2d 1301, 1310 (5th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 990 (1988).

In this case, viewing the facts and drawing inferences most favorably for Plaintiff, Defendant Bennie Click is entitled to qualified immunity as a matter of law. Plaintiff has not produced any evidence supporting his constitutional claims, and Defendants' evidence establishes that Chief Click was reasonable in his actions since Plaintiff was given a full and fair hearing by Chief Click. Defendant terminated Plaintiff only after reviewing Plaintiff's previous disciplinary record and the IAD recommendations after internal investigations into Plaintiff's conduct. Plaintiff has failed to raise any genuine issue as to any material fact on the issue of qualified immunity.

### III. CONCLUSION

For the foregoing reasons, Defendant's Motion for Summary Judgment is **GRANTED** as to all claims in Plaintiff's Complaint. All claims in Plaintiff's Complaint are hereby **DISMISSED WITH PREJUDICE**.